**MONI PULO LIMITED, Appellant,**

v.

**TRUTEC OIL AND GAS, INC., d/b/a Martindale Associates Limited, and Trutec Investment Services Company Limited, Appellees.**

No. 14–02–01078–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 4, 2003.

Rehearing Overruled March 11, 2004.

Ann Ryan Robertson, Murry B. Cohen, Houston, Tx, for appellants.

Adam Daniel Peavy, Houston, TX, Charles B. Kirklin, Friendswood, TX, for appellees.

Panel consists of Justice FOWLER and Senior Chief Justice MURPHY.

## SUBSTITUTED OPINION ON REHEARING

WANDA McKEE FOWLER, Justice.

Trutec Investment Services Company Limited (a Nigerian corporation)[1] sued Moni Pulo Limited (another Nigerian corporation) based on an agreement between the parties related to development of an oil field (at least partly Nigerian). Moni Pulo brings this interlocutory appeal from the denial of its special appearance. On rehearing, we withdraw our opinion of September 9, 2003, deny the motion for rehearing, and issue this substituted opinion. Finding insufficient grounds for personal jurisdiction, we reverse and render judgment dismissing the claims against Moni Pulo.

The following facts are not contested in the parties' briefs. All minerals in the country of Nigeria are owned by the government, which leases prospects for development to third parties, retaining a share for itself. The Nigerian government awarded an oil prospecting license and subsequently a lease (OPL–230) to Moni Pulo covering land offshore the Bakassi peninsula in 1992. Under Nigerian law, the government must approve any assignment by Moni Pulo of any interest in the lease.[2]

In 1994, Moni Pulo retained Trutec to provide a $1 million "signature bonus" payable to the government and to help find a

1. Only this party signed the agreements upon which this suit is based. The suit below and this appeal were also brought on behalf of "Trutec Oil and Gas, Inc. d/b/a Martindale Associates Limited." Martindale was mentioned in the original agreement as the signatory party's "overseas Technical associate," but is not a signatory of either agreement. At the time, Martindale was an Irish corporation, but merged with Trutec Oil & Gas, Inc., a Texas corporation, after suit was filed. The post-suit merger is irrelevant to our analysis. See Scott v. Huey L. Cheramie, Inc., 833 S.W.2d 240, 242 (Tex.App.-Houston [14th Dist.] 1992, no writ) (holding contract signed after injury occurred was irrelevant to jurisdictional analysis). As the jurisdictional question here does not turn on the involvement by Martindale or Trutec Oil and Gas, in this opinion we refer only to the contract party as "Trutec."

2. Petroleum Act, 1969, ch. 350, paras. 1, 2, 14, 16 (Nig.).

"technical partner" to oversee development. Their agreement originally provided that Trutec would receive a 10 percent interest in OPL–230,[3] but a second agreement signed in London in 1996 reduced Trutec's interest to 6 percent. Three months after the latter, Brass Exploration (a Nigerian subsidiary of Western Atlas, Inc., another defendant) agreed to act as Moni Pulo's technical partner and received a 40 percent interest in OPL–230. The Nigerian government approved the assignment to Brass, but has not approved any assignment to Trutec.

Drilling operations in OPL–230 resulted in substantial production and revenues. In May 1998, Trutec sued Moni Pulo in Nigeria for a 10 percent interest in these revenues, claiming the agreement reducing its interest to 6 percent was the result of coercion. When the case came to trial, Trutec's representative, Chief Wole Ariyo, left the stand during cross-examination, and the country. When he refused to return after several continuances, the trial court dismissed the suit. Trutec's appeal is still pending.

Two other suits complicate matters. First, a suit is currently pending in the Federal High Court of Justice in Abuja, Nigeria in which Seagull Oil Ltd. alleges that it, rather than Moni Pulo, is the rightful owner of OPL–230. Second, after the trial court denied Moni Pulo's special appearance, the International Court of Justice ruled that part of the oil field that includes OPL–230 belongs not to Nigeria but to Cameroon. Nigerian authorities have indicated they will ignore the International Court's ruling; there is no indication what Cameroon may do.

Trutec subsequently sued Moni Pulo, Brass, JP Morgan Chase Bank, and others in Harris County, alleging breach of contract, conversion, breach of fiduciary duty, tortious interference, and conspiracy, and seeking an accounting, a constructive trust, and a declaratory judgment. Moni Pulo filed a special appearance, and tendered an affidavit by its chairman, Chief O.B. Lulu–Briggs, that it has no directors, officers, employees, registered agents, telephone numbers, or mailing addresses in Texas, advertises and conducts no business in Texas, owns or leases no property and pays no taxes in Texas, and has never sued or been sued in Texas except for the present action. The trial court denied the special appearance based expressly on a finding of general jurisdiction; from that order Moni Pulo appeals. The applicable standards have been so often and recently repeated we do not do so again here.[4]

■ We begin by disposing briefly of Trutec's argument that specific jurisdiction attaches to its claims. Trutec's claims seek part of the revenues passing through bank accounts in Texas, but they do not arise from that occurrence. While those funds might satisfy Trutec's claims, the claims themselves arise from the agreements negotiated and signed in Nigeria and London. We hold Trutec's claims do not arise from or sufficiently relate to Texas to support specific jurisdiction.[5] Ac-

---

**3.** The first agreement provided:

In consideration of the Services to be provided by the Consulting Group, the owner hereby ASSIGNS to the Consulting Group 10% (Ten percent) of equity and 10% of buying in fees realized in OPL 230 and any leases granted therefrom and any extension thereof.

**4.** *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002); *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002).

**5.** *Cf. Primera Vista S.P.R. de R.L. v. Banca Serfin,* 974 S.W.2d 918, 923–24 (Tex.App.-El Paso 1998, no pet.) (finding no specific juris-

cordingly, we turn to the trial courts finding and Trutec's primary allegation—that Moni Pulo has sufficient contacts to support general jurisdiction.

### 1. Venturing with Brass

Trutec begins by pointing to Moni Pulo's contract with Brass, its joint venturer. Brass, like Moni Pulo, is a Nigerian entity. But Trutec relies on evidence that Brass's parent (Western Atlas) was headquartered in Houston, and that some negotiations and the eventual execution of the joint venture agreement took place there.[6]

For several reasons this evidence is legally insufficient to support general jurisdiction. First, Brass was not a Texas resident, so Moni Pulo was not contracting with a Texas resident.[7] Second, the residence of Brass's parent corporation is irrelevant absent evidence of alter ego (of which there is none here).[8] Third, it was Trutec rather than Moni Pulo that initiated contact with Brass.[9] Fourth, negotiating and signing a contract in Texas is insufficient if performance takes place elsewhere.[10]

diction based on money passing through defendant's Texas bank accounts).

6. Much of Trutec's "evidence" of minimum contacts appears nowhere outside its brief. It alleges that many Moni Pulo contracts were negotiated in Texas, but in support of this contention refers us only to the contracts themselves, which do not indicate where negotiations took place. It points to joint interest billing statements allegedly prepared in Houston, but cites no record support for this assertion, and the statements themselves indicate they were sent from Brass in Nigeria to Moni Pulo in Nigeria.

7. See TEX. CIV. PRAC. & REM.CODE § 17.042(1) (providing that nonresident does business in Texas by contracting with Texas resident who is to perform all or part of contract here). Trutec incorrectly asserts Brass was a Texas resident because it listed a Houston address on one agreement and sometimes designated a Houston address for notices. But "[a] corporation's residence is the place where its corporate affairs are conducted—its principal place of business." Ring Power Sys. v. Int'l De Comercio Y Consultoria, 39 S.W.3d 350, 355 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Although Texas law requires nonresident corporations to appoint a registered agent with a Texas address, they remain nonresidents. See TEX. CIV. PRAC. & REM.CODE § 17.041 et seq., TEX. BUS. CORP. ACT art. 8.10; Conner v. ContiCarriers and Terminals, Inc., 944 S.W.2d 405, 417 (Tex.App.-Houston [14th Dist.] 1997, no writ) (holding foreign corporation did not consent to jurisdiction in Texas by appointing registered agent).

8. See BMC Software, 83 S.W.3d at 799. Western Atlas's merger with Baker Hughes (located in Houston) in 1998 is irrelevant for the same reason.

9. See D.H. Blair Inv. Banking Corp. v. Reardon, 97 S.W.3d 269, 275 (Tex.App.-Houston [14th Dist.] 2002, pet dismd w.o.j.) (holding underwriters knowledge that Texas investors would be among those solicited did not establish purposeful availment as underwriter directed none of the contacts toward them). There was no evidence Trutec was directed by Moni Pulo to initiate any contact with Western Atlas, and Trutec's decision to do so is not attributable to Moni Pulo. See Rauscher Pierce Refsnes, Inc. v. Great Southwest Sav., F.A., 923 S.W.2d 112, 115 (Tex.App.-Houston [14th Dist.] 1996, no writ) (holding broker whose duty consists of bringing parties together to negotiate sale is "middleman" rather than "agent" of either party).

10. See Matthews v. Proler, 788 S.W.2d 172, 174 (Tex.App.-Houston [14th Dist] 1990, no writ) (finding no jurisdiction over nonresident client in suit for attorneys fees based on contract signed in Texas, as representation took place in Wisconsin); 3-D Elec. Co. v. Barnett Constr. Co., 706 S.W.2d 135, 138–40 (Tex. App.-Dallas 1986, writ refd n.r.e.) (holding negotiations and agreement by telephone and mail between Tennessee general contractor and Texas subcontractor insufficient to establish personal jurisdiction of the former in Texas, as construction work was performed in Colorado).

It is true that membership in a joint venture between nonresidents may establish minimum contacts if the business focuses on Texas,[11] but the venture here focused on another continent. In the latter context, the acts of one venturer do not create jurisdiction (as opposed to liability) for another—that is, there are no imputed minimum contacts.[12] In its brief, Trutec repeatedly asserts that Moni Pulo "through its agent" made various contacts, but almost invariably the record reflects an employee of some other company did the deed, with no evidence of direction or control by Moni Pulo.[13]

Trutec also relies on several provisions in the agreements between the two Nigerian entities. First, an agenda written well before the parties signed their venture agreement indicates they originally planned to establish an office in Houston. But the record establishes they later changed those plans. Generally, personal jurisdiction requires proof that a party purposefully availed itself of the jurisdiction, not that it *planned* to do so. If wishes were minimum contacts, we would be exercising jurisdiction of plans rather than jurisdiction of persons.

Additionally, the operating agreement between the Nigerian companies for a period of 18 months listed a Houston address for notices to Brass and contained a Texas choice-of-law provision.[14] But again, there is no evidence either provision was ever followed. During that 18–month period, all notices were actually sent to Brass in Nigeria, and there were no disputes regarding the operating agreement that required invocation of Texas law. Moreover, as the agreement also designated arbitration in London as the exclusive means for settling disputes, it appears the parties intended to borrow our state's well-developed oil-and-gas law without availing themselves of any protection from our courts.[15] We hold Moni Pulo's contacts with Brass are legally insufficient to estab-

---

**11.** *See Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 666 (Tex.1987).

**12.** *See Nat'l Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 773–74 (Tex.1995) (holding conspiracy claim could not be used to impute jurisdictional contracts of one defendant within the forum to another defendant); *see also Shaffer v. Heitner,* 433 U.S. 186, 204 & n. 19, 97 S.Ct. 2569, 2579–80, 53 L.Ed.2d 683 (1977) (holding jurisdiction depends on relationship of each defendant to forum, not relationship between defendants).

**13.** We *recently found specific* jurisdiction of a nonresident corporation that, though it did not authorize an agreement negotiated in Texas between Texas residents, nevertheless ratified it by retaining the benefits that followed. *See Walker Ins. Servs. v. Bottle Rock Power Corp.,* 108 S.W.3d 538, 552 (Tex.App.-Houston [14th Dist.] 2003, no pet. h.). But a nonresident does not subject itself to general jurisdiction every time it retains the benefits that flow from a third-party's Texas contacts. *See, e.g., Helicopteros Nacionales de Colombia*

*v. Hall,* 466 U.S. 408, 416–17, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984) (finding no general jurisdiction of Peruvian company that accepted benefits of $5 million contract with Peruvian joint venture headquartered in Texas); *CMMC v. Salinas,* 929 S.W.2d 435, 439 (Tex.1996) (finding no general jurisdiction of French company that accepted benefits of sale by shipping press to Texas per instructions of its distributor). Accordingly, Moni Pulo's subsequent ratification of choices made by third parties does not constitute purposeful availment sufficient for general jurisdiction.

**14.** The choice-of-law clause was later amended to designate English law, and still later Nigerian law. The address for notices was also changed to an address in England. All amendments to the Operating Agreement were negotiated and signed outside of Texas.

**15.** *See 3–D Elec. Co.,* 706 S.W.2d at 145 n. 9 (holding choice-of-law clause was not voluntary submission to personal jurisdiction of Texas courts absent express understanding to that effect).

lish general jurisdiction of Moni Pulo in Texas.

## 2. Banking with Chase

 The development of OPL–230 was financed by a revolving $80 million loan from a syndicate led by Chase Bank.[16] Moni Pulo signed two promissory notes for the loan, and assigned a security interest in its receivables as collateral. For its own security, Chase required the joint venture to set up two accounts—one for proceeds from the loan and one for proceeds from the sale of hydrocarbons. The loan documents gave Chase "sole dominion" over both accounts.[17] The loan documents contain choice-of-law and forum-selection clauses designating the law and courts of New York.[18]

The most important characteristic of these accounts is that Moni Pulo could not control or draw upon either. The joint venture documents gave Brass sole responsibility to maintain the accounts. The loan documents gave Brass sole discretion to request disbursements. Only Brass could call for advances on the loan or pay bills using the accounts. All account statements and notices were sent to Brass alone.[19] Although Trutec asserts Moni Pulo's agents operated these accounts, the three individuals it names were each employed by Brass or its affiliates. While Brass and its representatives had Moni Pulo's limited power of attorney to conduct all banking activities, this did not make them Moni Pulo's agents for jurisdictional purposes; there is no evidence it could control or direct any of their actions, and the documents taken as a whole (including the power of attorney) indicate just the opposite.

Banking activities in Texas are often considered in special appearance cases,[20] but they rarely concern accounts over which the nonresident has so little control. While Moni Pulo was clearly a beneficiary of the Chase loans and accounts, the joint venture and banking agreements delegated control of those activities solely to Brass. Nor is there any evidence Moni Pulo chose Chase or Houston as the location; indeed, when the loan was paid off in 2001, the joint venture accounts were moved to London. And the purpose of the banking activities was not any venture in Texas.

 Due process limits jurisdiction to nonresidents who purposefully avail them-

---

16. Trutec also points to evidence referencing a potential credit agreement with Texas Commerce Bank, but there is no evidence this loan was ever consummated.

17. Trutec asserts Chase was Moni Pulo's agent. But the loan documents provide that "[e]ach Lender hereby irrevocably appoints and authorizes Agent [Chase] to act as its agent hereunder," that "Agent may be removed at any time ... by the Majority Lenders," and that "as between Agent and Borrower, Agent shall be conclusively presumed to be acting as agent for the Lenders." A paragraph of one document gave Chase a power of attorney in the event of default, but Trutec presents no evidence that a default ever occurred or that Chase took any action pursuant to this provision.

18. There is also a "Floating Debenture" whose purpose is not well explained in the record, but in which Moni Pulo purported to appoint the bank as "its attorneys" to act on its behalf under certain listed covenants and powers. There is no evidence that Chase took any action in Moni Pulo's name under this provision.

19. Trutec points to several statements for a London bank account that list the account holders as Moni Pulo and Brass and give a Houston "P.O. Box" for the pair. A post office box is not evidence that either had an office in Texas or, if so, which entity's office it was.

20. See, e.g., CSR Ltd. v. Link, 925 S.W.2d 591, 595 (Tex.1996).

selves of the privilege of conducting activities in Texas; a party cannot be required to appear and litigate in Texas based on choices made by others.[21] Our sister court has refused to find general jurisdiction over a nonresident corporation that deposited funds in its subsidiaries' Texas bank accounts when the choice to locate those accounts in Texas was made by the subsidiaries alone.[22] Accordingly, we do not find that Moni Pulo's Texas bank accounts indicate that it purposefully aimed and conducted continuous and substantial activity in this state.

### 3. Contracting with Drillers

■ Among the many development contracts signed by Moni Pulo were a handful with Nigerian subsidiaries of Houston-based drilling companies.[23] Three were signed by Moni Pulo (a Nigerian entity), Brass (a Nigerian entity), Triton Drilling Services Nigeria, Ltd. (a Nigerian entity), and Triton International, Inc. (a Delaware company located in Houston). One was signed by Noble International Limited (a Cayman Islands entity), Noble Drilling (Nigeria) Ltd. (a Nigerian entity), and Noble Drilling International, Inc. (a Delaware corporation with a Houston address). Each of these contracts designated Houston as the exclusive forum for disputes,[24] and each chose Texas law as a primary or secondary source.[25] No such disputes ever occurred, and the contracts themselves are unrelated to this litigation.

■ Drilling contracts are performed almost entirely where the drilling takes place.[26] Generally, a contract calling for performance outside Texas does not subject a party to jurisdiction here.[27] Many drilling companies have offices in Texas, and many use form contracts choosing Texas law and courts for resolution of disputes. Following Trutec's argument to its logical conclusion, anyone that ever hires one of these companies or signs one of their form contracts thereby submits itself to suit in Texas by all claimants for all purposes (that is, general jurisdiction), even suits having nothing to do with either drilling or Texas. The constitution does not allow Texas courts to reach that far.[28]

---

**21.** *Helicopteros*, 466 U.S. at 416–17, 104 S.Ct. at 1873 (finding no general jurisdiction of Peruvian company paid from Texas bank, as no evidence indicated it ever requested or negotiated for that arrangement).

**22.** *See Preussag v. Coleman*, 16 S.W.3d 110, 123–24 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.); *see also Primera Vista*, 974 S.W.2d at 926 (finding no general jurisdiction when nonresident's Texas bank accounts were accommodation to clients' business interests and not its own).

**23.** Under the original Joint Operating Agreement, Brass was responsible for negotiating and awarding such contracts. The amended Operating Agreement further limited Moni Pulo's role to handling relations with the Nigerian government, people, and businesses. There is no evidence Moni Pulo negotiated or signed any of these contracts in Texas.

**24.** The Triton contracts called for arbitration in Houston; the Noble contract selected Houston state and federal courts for disputes.

**25.** The Noble contract designated Texas law; the Triton contracts designated U.S. maritime law, with Texas law applicable when maritime law was not.

**26.** *See Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 54 (Tex.1991) (holding in choice-of-law analysis that "nearly all" drilling services were contemplated and rendered where well was drilled).

**27.** *See Am. Type Culture Collection*, 83 S.W.3d at 808 (citing *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375–76 (5th Cir.1987)).

**28.** *See Primera Vista*, 974 S.W.2d at 926 (holding nonresident defendants single previous collection suit in Texas insufficient to establish general jurisdiction); *cf. James v.*

## 4. Buying, Selling, and Coming to Texas

Trutec broadly alleges that Moni Pulo "acquired, either directly or indirectly, every type of good or service necessary to explore and produce hydrocarbons from OPL–230 from vendors in Houston, Texas." But the evidence supporting this claim is lacking. Trutec cites invoice statements listing vendors and a list of recommended contractors, but none of these indicate where the vendors or contractors were located. There was evidence that Moni Pulo bought software from a Texas vendor, but this single purchase is hardly enough to support general jurisdiction.[29]

Trutec points to invoices for sales of oil from OPL–230 that Brass sent to Houston addresses and directed payment to a Houston bank account. But it is undisputed the sales occurred outside Texas, and there is no evidence indicating any purchaser's home office or state of incorporation. As noted above, it was Brass rather than Moni Pulo that issued all invoices,[30] the purchasers rather than Moni Pulo who chose where the invoices would be sent, and Chase rather than Moni Pulo that required payment into the Texas account. The sale of Nigerian oil outside Texas by Nigerian entities does not establish jurisdiction because of the choices of these purchasers or Chase.[31]

Trutec also points to approximately fifteen visits to Texas by Moni Pulo representatives between 1995 and 2001. There is little in the record regarding the details of these visits, but it is difficult to say that two or three visits a year are continuous and systematic.[32] It does appear all were related to the joint venture with Brass or the banking arrangements with Chase, and thus focused on Moni Pulo's business in Africa rather than any project in Texas. These occasional and isolated visits to Texas are insufficient to establish general jurisdiction.[33]

Finally, Trutec argues that even if none of these contacts rise to the "minimum" level required by due process, we should nevertheless find general jurisdic-

---

*Ill. Cent. R.R.*, 965 S.W.2d 594, 597–98 (Tex. App.-Houston [1st Dist] 1998, no pet.) (holding nonresident railroads solicitation of substantial Texas business and defense of two previous suits in Texas established general jurisdiction, but would still be unconstitutional under fair-play test in case filed by Tennessee resident for personal injury occurring in Tennessee).

29. *See Helicopteros*, 466 U.S. at 417–18, 104 S.Ct. at 1873–74; *BMC Software*, 83 S.W.3d at 797.

30. The invoices generally requested payment to Brass and then listed particular account numbers. A few mentioned Moni Pulo as receiving a share, but payment was still requested in Brass's name.

31. *See Blair Communications, Inc. v. SES Survey Equip. Servs., Inc.*, 80 S.W.3d 723, 730 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (finding no specific jurisdiction of New York entity that leased equipment in England and shipped it to New York for use but sent payment to lessor in Texas).

32. *See Luker v. Luker*, 776 S.W.2d 624, 626 (Tex.App.-Texarkana 1989, writ denied) (holding travel to visit relatives in Texas three or four times a year was not continuing and systematic contact).

33. *See Helicopteros*, 466 U.S. at 417, 104 S.Ct. at 1873 (finding no general jurisdiction based on purchases and related trips to Texas); *D.H. Blair Inv. Banking*, 97 S.W.3d at 276–77 (finding no general jurisdiction of New York underwriter that participated in funding two Texas businesses over a ten year period and solicited half a dozen others); *Reyes v. Marine Drilling Cos.*, 944 S.W.2d 401, 403 (Tex.App.-Houston [14th Dist.] 1997, no writ) (finding no general jurisdiction of nonresident company that sent representatives to Texas on at least 204 occasions to inspect potential vendors).

tion based on the sum of them. But it is the quality of the evidence rather than the quantity we must consider.[34] Applying that standard, we find the evidence insufficient to support a conclusion that Moni Pulo purposefully directed substantial, continuous, and systematic contacts toward Texas.[35] To the contrary, the contacts have been fortuitous, attenuated, for limited purposes, and at the insistence of third parties.[36] Accordingly, the trial court erred in finding general jurisdiction over Moni Pulo.

### 5. Fair Play & Substantial Justice

 Even were the contacts noted above sufficient to establish general jurisdiction, exercising jurisdiction over this dispute would offend traditional notions of fair play and substantial justice.[37] Considering the unique burdens placed on a defendant required to defend itself in a foreign legal system, the policies of other nations whose interests may be affected, and the potential impact on foreign relations,[38] we find there are compelling reasons for Texas courts not to involve themselves in this dispute.

First, Moni Pulo is wholly a product of Nigeria—created under the laws of Nigeria, owned by Nigerians, based in Nigeria, and whose sole purpose is production of oil and gas in Nigeria. Its chairman is in his seventies and suffers from Parkinson's Disease. There was evidence his absence for an extended period of time would put production at risk due to instability and unrest in Nigeria.

Second, Texas has no interest in this dispute among Nigerian entities regarding Nigerian mineral interests.[39] The Nigerian government's ownership *ab initio* of all minerals in the country and retention of the power to grant leases and approve all assignments suggests it takes a close interest in these matters, and would hardly view Trutec's claim as a private matter between private parties. Generally, Texas has no interest in adjudicating a case between nonresidents concerning occurrences that took place outside of Texas.[40]

Third, Trutec's behavior also establishes that exercising jurisdiction over Moni Pulo would offend traditional notions of fair

**34.** *See Am. Type Culture Collection, Inc.*, 83 S.W.3d at 806; *Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 230 n. 11 (Tex.1991).

**35.** *See Am. Type*, 83 S.W.3d at 806–07.

**36.** *Id.* at 806.

**37.** *See Asahi Metal Indus. v. Superior Court*, 480 U.S. 102, 115, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987).

**38.** *See Guardian Royal Exch. Assurance Ltd.*, 815 S.W.2d at 228.

**39.** Texas law would view Trutec's suit as a claim for a mineral interests, and thus title to land, *see Yzaguirre v. KCS Resources, Inc.*, 53 S.W.3d 368, 371 (Tex.2001); Trutec's attempt to recast it as a mere suit for damages would be disregarded, *see Madera Production Co. v.*

*Atlantic Richfield Co.*, 107 S.W.3d 652, 660 (Tex.App.-Texarkana 2003, no pet. h.) (holding suit for damages based on ownership of mineral interest was suit for title to land governed by mandatory venue statute). Neither party asserts that Nigerian law is otherwise. On this basis, Moni Pulo also asserts the trial court had no subject matter jurisdiction of this lawsuit. As we determine the trial court had no personal jurisdiction, we do not reach that question. *See generally Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577–78, 119 S.Ct. 1563, 1567, 143 L.Ed.2d 760 (1999).

**40.** *See Guardian Royal Assurance*, 815 S.W.2d at 232–33 (holding Texas had no interest in adjudicating an insurance dispute between two nonresidents); *James*, 965 S.W.2d at 599 (holding fair play offended by exercise of jurisdiction over Tennessee residents claim against nonresident defendant for personal injuries that occurred in Tennessee).

play. Trutec originally filed suit against Moni Pulo in Nigeria, then abandoned the action in the middle of trial and in apparent contempt of court. Having fled the jurisdiction most closely connected to the litigation and the parties, Trutec would now have Texas courts reach within that jurisdiction to impose an opposite result. This is reaching too far.

All of which pales in comparison with the uncertainty whether Moni Pulo or even Nigeria have any claim to OPL–230. Texas courts have substantial experience and expertise in oil-and-gas matters, but none in Nigerian ministerial affairs or the effect of colonial treaties on African boundary disputes. Asking Texas jurors to decide such matters places them in an untenable position.

■ It is not unusual that development of petroleum resources in far-off corners of the world will show some connections with Texas entities and individuals. But our courts are not international courts of justice, and can only exercise jurisdiction over those within our jurisdictional power. Here, all operations were conducted through Nigerian entities and concern what all at least thought was Nigerian territory. Given the history of this litigation and the complexities that have arisen, it is unreasonable for us to settle them here:

> The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case. In every case, however, those interests, as well as the Federal Government's interest in its foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and

an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State.[41]

Accordingly, the trial court's order denying Moni Pulo's special appearance is reversed and the claims against Moni Pulo are dismissed for want of personal jurisdiction.

Former Chief Justice SCOTT BRISTER not participating.[42]

---

41. *Asahi,* 480 U.S. at 115, 107 S.Ct. at 1034.

42. Senior Chief Justice Paul Murphy sitting by assignment.