NO. 07-05-0273-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



FEBRUARY 14, 2006



______________________________


 

ARK OF SAFETY CHRISTIAN CHURCH, INC., APPELLANT



V.



CHURCH LOANS & INVESTMENTS TRUST, APPELLEE


_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 093264-00-E; HONORABLE ABE LOPEZ, JUDGE


_______________________________




Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

MEMORANDUM OPINION


 Ark of Safety Christian Church brings this appeal from an order denying its special
appearance. We affirm.

 In June 2004, appellee, Church Loans & Investments Trust (Church), an Amarillo
lender, was contacted by Byron Knighton (Knighton) on behalf of appellant, Ark of Safety
Christian Church (Ark), a Maryland corporation, regarding Church making a $4,000,000
loan to Ark. The loan was to refinance and renovate existing Ark properties located in
Maryland. Subsequently, on June 28, 2004, Knighton faxed his "Client-Broker Agreement"
with Ark to Church. On the same date, Knighton faxed Church a completed "Mortgage
Loan Application" signed by Ark. After negotiations, by use of telephone, faxes and email,
Church sent Ark a "Commitment Letter" agreeing to loan the $4,000,000 to Ark. On August
10, 2004, Ark signed and returned the "Commitment Letter" to Church signifying Ark's
acceptance of its terms. After payment of one-half of the commitment fee and some other
expenses, Ark defaulted on the agreement and suit was filed. The trial court heard Ark's
special appearance and motion to dismiss and denied the same. Ark gave notice of
appeal and the trial court filed findings of fact and conclusions of law finding both general
and specific jurisdiction. 

 By one issue, Ark challenges the factual basis to find sufficient contacts with Texas
to maintain either general or specific jurisdiction in Texas over Ark.

STANDARD OF REVIEW


 A plaintiff bringing suit against a non-resident defendant bears the burden of
pleading facts sufficient to bring the defendant within the reach of the Texas long-arm
statute. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002). 
Upon filing a special appearance, the non-resident defendant then assumes the burden
of negating all bases of personal jurisdiction alleged by the plaintiff. Am. Type Culture
Collection, Inc. v. Coleman, 83 S.W.3d 801, 807 (Tex. 2002). 

 Whether a court has personal jurisdiction over a non-resident defendant is a
question of law and is reviewed de novo. See BMC Software Belgium, 83 S.W.3d at 794. 
However, the trial court must frequently resolve questions of fact before deciding the
jurisdictional question. See id. We review the trial court's factual findings for legal and
factual sufficiency. Id. 

 The Texas long-arm statute deals with the issue of exercising jurisdiction over non-resident defendants. See Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.045 (Vernon 1997
and Vernon Supp. 2005). (1) Section 17.042 provides a list of activities that constitute doing
business within Texas. The list is not exclusive and § 17.042's broad language extends
a Texas court's personal jurisdiction as far as the federal constitutional requirements of due
process will permit. BMC Software Belgium, 83 S.W.3d at 795. We therefore, consult both
the cases from the federal courts, as well as our state courts, in determining whether the
non-resident defendant has met its burden to negate all bases of jurisdiction. Id. The
United States Supreme Court has divided this due process requirement into two parts: 1)
whether the non-resident defendant has purposely established "minimum contacts" with
the forum state; and 2) if so, whether the exercise of jurisdiction comports with "fair play
and substantial justice." Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,
815 S.W.2d 223, 226 (Tex. 1991) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462,
475-76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

 The minimum contacts analysis requires a determination of whether the non-resident defendant purposefully availed itself of the privilege of conducting activities within
the forum state, thus invoking the benefits and protections of its laws. Burger King, 471
U.S. at 474-75. The purposeful availment requirement protects the non-resident defendant
from being haled into a jurisdiction based solely upon random, fortuitous or attenuated
contacts or the unilateral activity of another party or a third person. Id. at 475. The non-resident defendant must have fair warning that a particular activity may subject it to the
jurisdiction of a foreign sovereign. Id. at 472; Zac Smith & Co. v. Otis Elevator Co., 734
S.W.2d 662, 663 (Tex. 1987). The constitutional touchstone remains whether the non-resident defendant purposely established minimum contacts with the forum state. 
Guardian Royal, 815 S.W.2d at 226-27. Although an important consideration,
foreseeability is not determinative of, nor an independent element of, the minimum contact
analysis; rather it is implicit in the requirement of a substantial connection between the non-resident defendant and Texas. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S.
286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). 

 The minimum contacts requirement can be met by showing either general or specific
jurisdiction. General jurisdiction requires continuous and systematic contacts between the
non-resident and the forum state. Guardian Royal, 815 S.W.2d at 230. Specific
jurisdiction may be asserted when the cause of action arises out of or is related to the
activities the non-resident defendant has conducted within Texas. BMC Software Belgium,
83 S.W.3d at 796. 

ANALYSIS


 Ark does not argue that the pleadings of Church were not sufficient to raise the
issue of personal jurisdiction, therefore, the burden of negating all basis of personal
jurisdiction rests with Ark. Am. Type Culture, 83 S.W.3d at 807. The facts leading to the
signing of the "commitment letter" and payment of one-half of the commitment fee and
expenses are also undisputed. The disagreement is who actually did some of the acts
described and the legal affect of those actions. 

General Jurisdiction


 Ark first contends that there have been no continuous and systematic contacts with
Texas sufficient to subject it to the general jurisdiction of the Texas legal system. Based
on the record before us, Ark has made numerous contacts over a relatively short period
of time for the specific purpose of obtaining the loan from Church. Ark's contacts with
Texas do not demonstrate a pattern of continuing and systematic activity. Schlobohm v.
Schapiro, 784 S.W.2d 355, 357 (Tex. 1990) (citing Helicopteros Nacionales de Colombia,
S.A. v. Hall, 466 U.S. 408, 414, n.9, 104 S.Ct 1868, 80 L.Ed.2d 404 (1984)). It is the
quality of the contacts and not just the number of contacts that is determinative on the
issue of general jurisdiction. Am. Type Culture, 83 S.W.3d at 809-810. After reviewing
the contacts in question, we agree with Ark that there are insufficient contacts to maintain
general jurisdiction. Therefore, we conclude the trial court erred in finding general
jurisdiction. 

Specific Jurisdiction


Agency


 In determining the issue of specific jurisdiction, the first question to be confronted
is the status of Knighton. Ark's brief suggests that Knighton was a random third party
whose actions could not be considered in properly determining specific jurisdiction over
Ark. The record, however, demonstrates that Knighton sought out Church and was the
"Broker" for Ark in procuring a $4,000,000 loan. The Client/Broker Agreement signed by
Knighton and Ark says that "'SUCCESSFUL PROCUREMENT OF FINANCING' means
that the Broker has obtained a binding commitment from the lender to advance funds, and
that the commitment has been accepted by the Client." It was in order to achieve this sole
result that Knighton contacted Church. The Client/Broker Agreement further provides that
Ark will furnish, at its expense, all documents, information, plans, specifications, etc. to
Broker to be used by Broker or lenders in negotiating a loan. In essence, the
Client/Broker Agreement provided Knighton authority to obtain a loan commitment for Ark,
subject to Ark's final approval. Under such an agreement, Knighton was the agent for Ark
in finding a lender and procuring financing. Royal Mortgage Corp. v. Montague, 41
S.W.3d 721, 733-34 (Tex.App.-Fort Worth 2001, no pet.). Having determined that
Knighton was the agent for Ark, the next consideration is the effect of Knighton's contact.

 The record establishes Church had no previous contact with either Knighton nor
Ark. Further, there is nothing in the record to indicate that Church conducts any type of
general advertising for borrowers. The resulting conclusion is that Ark, through its agent's
and its own acts, purposefully sought out Church as a source of financing. It is also clear
from the record that Ark ratified Knighton's actions by subsequently executing the
commitment contract. Walker Ins. Servs. v. Bottle Rock Power Corp., 108 S.W.3d 538,
552 (Tex.App.-Houston [14th Dist.] 2003, no pet.). 


Minimum Contacts 


 Ark posits that the contacts between the parties that Church contends establishes
jurisdiction are the acts of Church alone. As such, they are insufficient to establish
minimum contacts. U-Anchor Adver., Inc. v. Burt, 553 S.W.2d 760, 763 (Tex. 1977). 
However, the findings of fact by the trial court identify twelve separate acts performed by
Ark. Although Ark has generally challenged the findings of fact and conclusions of law,
in footnote 4 of its brief, it does not specifically challenge the findings in paragraph 10 of
the trial court's findings of fact and conclusions of law. Assuming arguendo that the
challenges listed in the footnote are sufficient to raise the issue of the findings contained
in paragraph 10, Ark has failed to identify any evidence that would controvert these
findings. The burden was on Ark to provide the court with such evidence. Am. Type
Culture, 83 S.W.3d at 807. Ark has failed to meet this burden and those facts listed in
paragraph 10 have, for our purposes, been determined.

 Ark further contends that, even if it performed the acts alleged by Church, the legal
effect does not render Ark amenable to personal jurisdiction. Ark cites the court to the
cases of 3-D Elec. Co. v. Barnett Constr. Co., 706 S.W.2d 135 (Tex.App.-Dallas 1986,
writ ref'd n.r.e.), Blair Commc'ns, Inc. v. SES Survey Equip. Servs., Inc., 80 S.W.3d 723
(Tex.App.-Houston [1st Dist.] 2002, no pet.), and Moni Pulo Ltd. v. Trutec Oil and Gas,
Inc., 130 S.W.3d 170 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) as demonstrating
that Church's proof was legally deficient. However, a close reading of the cases discloses
significant differences between the cited cases and the facts before us. In 3-D Elec. Co.,
the non-resident defendant did not initiate the contact with the Texas plaintiff. Rather, a
third party, who the appellate court stated was not the alter ego of the defendant
corporation but a subsidiary, initiated the contracting process. Generally, a foreign parent
corporation is not subject to the jurisdiction of the forum state merely because its
subsidiary conducts business in that forum. 3-D Elec. Co. 706 S.W., 2d at 139. In Blair, 
the initial contact was again by a third party. In resolving the case against extending
jurisdiction over the non-resident defendant, the court again cited the non-party initiation
of the contract. Blair Commc'ns, Inc., 80 S.W.3d at 729. Finally, in Moni Pulo Ltd., the
plaintiff initiated the contact with Texas rather than the defendant. Additionally, the issue
of maintenance of general jurisdiction, based on the negotiation of a contract in Texas by
two non-residents for the performance of a joint venture outside of Texas was before the 
court. Moni Pulo Ltd., 130 S.W.3d at 175-76. Thus, all of these cases are distinguishable
from the facts before the court.

 Ark next contends that the findings contained in paragraph 13 of the trial court's
findings of fact and conclusions of law are future acts required by a contract that was
never signed and, therefore, are of no legal affect. Specifically, Ark posits that the law
does not permit anticipated, contemplated or executory actions/obligations to form the
basis for minimum contacts. See Moni Pulo Ltd, 130 S.W.3d at 176. Future plans by
themselves cannot create personal jurisdiction where no other actions existed, however,
future plans and executory contracts can be considered factors in determining whether
minimum contacts exist. See Burger King, 471 U.S. at 479. Therefore, the trial court was
permitted to consider the future plans and executory contracts as part of the totality of the
contacts between the parties.

Legal Sufficiency


 Ark contends that the evidence is legally insufficient to sustain personal jurisdiction
over it. In reviewing the trial court's findings of fact for legal sufficiency, we consider only
the evidence and inferences tending to support the trial court's findings, disregarding all
contrary evidence and inferences. Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934,
936 (Tex. 1998). The record before us clearly demonstrates that Ark purposefully
contacted Church to obtain a loan from a Texas resident. Accordingly, we conclude that 
the evidence is legally sufficient to support the findings of fact issued by the trial court.

Factual Sufficiency


 Having considered Ark's various contentions about the legal affect of the trial
court's resolution of evidentiary matters, the next issue would be to consider the factual
sufficiency of the total record. We review the entire record, both the evidence favorable
to and contrary to the trial court's finding. Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986). Ark points to the facts, evidenced in the record, that Ark is a Maryland
corporation with its principal place of business located in Maryland; Ark had not done
business in the State of Texas nor did it own any real property in the state; the property
involved in the transaction was located in Maryland; the administrative requirements for
the loan commitment either were performed in or could have been performed in Maryland; 
and that Church does business throughout the United States. However, even when all
of this evidence is considered, there is still one overwhelming factor; Ark purposely
contacted Church, both through its agent and directly, with the specific design and goal
of obtaining a loan from a Texas resident. When all of the evidence is reviewed, both that
which tends to prove and disprove the jurisdictional allegations, we cannot say that
exercising jurisdiction over Ark is so contrary to the great weight and preponderance of
the evidence as to be manifestly unjust. Royal Mortgage Corp., 41 S.W.3d at 730. 
Therefore, we conclude that the evidence is factually sufficient to support the decision of
the trial court in finding purposeful contacts with the State of Texas for the purpose of
specific jurisdiction over Ark.

Fair Play and Substantial Justice


 However, finding the evidence factually sufficient to support a minimum contacts
finding is not the end of the inquiry. An assertion of personal jurisdiction may not offend
traditional notions of fair play and substantial justice. Burger King, 471 U.S. at 476; see
also Guardian Royal, 815 S.W.2d at 228. When a non-resident defendant has
purposefully established minimum contacts with the forum state, the exercise of
jurisdiction will rarely not comport with traditional notions of fair play and substantial
justice. See Burger King, 471 U.S. at 477-78. In discussing the issue of traditional
notions of fair play and substantial justice, Ark concentrates on the lack of minimum
contacts. Those matters have been decided against it. The relative convenience of the
parties will be equal. Either way one of the parties must travel to another state to get this
matter determined. Having found that Ark purposefully directed its activities toward a
Texas resident, it is Ark's burden to present a compelling case that some other
consideration would render jurisdiction unreasonable. Id. at 477. Ark has not presented
any such compelling case; therefore, we conclude that exercising jurisdiction over Ark
comports with traditional notions of fair play and substantial justice.

CONCLUSION


 Having concluded that the trial court's exercise of specific jurisdiction was proper,
we affirm the judgment of the trial court. 

 

 Mackey K. Hancock

 Justice



1. 
 "§ "