NO. 07-05-0273-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

FEBRUARY 14, 2006

______________________________

ARK OF SAFETY CHRISTIAN CHURCH, INC., APPELLANT

V.

CHURCH LOANS & INVESTMENTS TRUST, APPELLEE

_________________________________

FROM THE 108
TH
 DISTRICT COURT OF POTTER COUNTY;

NO. 093264-00-E; HONORABLE ABE LOPEZ, JUDGE

_______________________________

Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

MEMORANDUM OPINION

Ark of Safety Christian Church brings this appeal from an order denying its special appearance.  We affirm.

 In June 2004, appellee, Church Loans & Investments Trust (Church), an Amarillo lender, was contacted by Byron Knighton (Knighton) on behalf of appellant, Ark of Safety Christian Church (Ark), a Maryland corporation, regarding Church making a $4,000,000 loan to Ark.  The loan was to refinance and renovate existing Ark properties located in Maryland.  Subsequently, on June 28, 2004, Knighton faxed his “Client-Broker Agreement” with Ark to Church.  On the same date, Knighton faxed Church a completed “Mortgage Loan Application” signed by Ark.  After negotiations, by use of telephone, faxes and email, Church sent Ark a “Commitment Letter” agreeing to loan the $4,000,000 to Ark.  On August 10, 2004, Ark signed and returned the “Commitment Letter” to Church signifying Ark’s acceptance of its terms.  After payment of one-half of the commitment fee and some other expenses, Ark defaulted on the agreement and suit was filed.  The trial court heard Ark’s special appearance and motion to dismiss and denied the same.  Ark gave notice of appeal and the trial court filed findings of fact and conclusions of law finding both general and specific jurisdiction.  

By one issue, Ark challenges the factual basis to find sufficient contacts with Texas to maintain either general or specific jurisdiction in Texas over Ark.

STANDARD OF REVIEW

A plaintiff bringing suit against a non-resident defendant bears the burden of pleading facts sufficient to bring the defendant within the reach of the Texas long-arm statute.  
BMC Software Belgium, N.V.  v. Marchand
, 83 S.W.3d 789, 793 (Tex. 2002).  Upon filing a special appearance, the non-resident defendant then assumes the burden of negating all bases of personal jurisdiction alleged by the plaintiff.  
Am. Type Culture Collection, Inc. v. Coleman
, 83 S.W.3d 801, 807 (Tex. 2002). 

Whether a court has personal jurisdiction over a non-resident defendant is a question of law and is reviewed 
de novo
.  
See
 
BMC Software Belgium
, 83 S.W.3d at 794.  However, the trial court must frequently resolve questions of fact before deciding the jurisdictional question.  
See
 
id.
  We review the trial court’s factual findings for legal and factual sufficiency.  
Id.
 

The Texas long-arm statute deals with the issue of exercising jurisdiction over non-resident defendants. 
See
 
Tex. Civ. Prac. & Rem. Code
 A
nn
. §§ 17.041-.045 (Vernon 1997 and Vernon Supp. 2005).
(footnote: 1)  Section 17.042
 
provides a list of activities that constitute doing business within Texas.  The list is not exclusive and § 17.042's broad language extends a Texas court’s personal jurisdiction as far as the federal constitutional requirements of due process will permit.  
BMC Software Belgium
, 83 S.W.3d at 795.
  
We therefore, consult both the cases from the federal courts, as well as our state courts, in determining whether the non-resident defendant has met its burden to negate all bases of jurisdiction. 
Id.
  The United States Supreme Court has divided this due process requirement into two parts: 1) whether the non-resident defendant has purposely established “minimum contacts” with the forum state; and 2) if so, whether the exercise of jurisdiction comports with “fair play and substantial justice.”  
Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.
, 815 S.W.2d 223, 226 (Tex. 1991) (citing 
Burger King Corp. v. Rudzewicz
, 471 U.S. 462, 475-76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

The minimum contacts analysis requires a determination of whether the non-resident defendant purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.  
Burger King
, 471 U.S. at 474-75.  The purposeful availment requirement protects the non-resident defendant from being haled into a jurisdiction based solely upon random, fortuitous or attenuated contacts or the unilateral activity of another party or a third person.  
Id.
 at 475.  The non-resident defendant must have fair warning that a particular activity 
may subject it to the jurisdiction of a foreign sovereign.  
Id.
 at 472; 
Zac Smith & Co. v. Otis Elevator Co.
, 734 S.W.2d 662, 663 (Tex. 1987).  The constitutional touchstone remains whether the non-resident defendant purposely established minimum contacts with the forum state.  
Guardian Royal
, 815 S.W.2d at 226-27.  Although an important consideration, foreseeability
 
is not determinative of, nor an independent element of, the minimum contact analysis; rather it is implicit in the requirement of a substantial connection between the non-resident defendant and Texas.  
See
 
World-Wide Volkswagen Corp. v. Woodson
, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). 

The minimum contacts requirement can be met by showing either general or specific jurisdiction.  General jurisdiction requires continuous and systematic contacts between the non-resident and the forum state.  
Guardian Royal
, 815 S.W.2d at 230.  Specific jurisdiction may be asserted when the cause of action arises out of or is related to the activities the non-resident defendant has conducted within Texas.  
BMC Software Belgium
, 83 S.W.3d at 796.  

ANALYSIS

Ark does not argue that the pleadings of Church were not sufficient to raise the issue of personal jurisdiction, therefore, the burden of negating all basis of personal jurisdiction rests with Ark.  
Am. Type Culture
, 83 S.W.3d at 807.  The facts leading to the signing of the “commitment letter” and payment of one-half of the commitment fee and expenses are also undisputed.  The disagreement is who actually did some of the acts described and the legal affect of those actions.  

General Jurisdiction

Ark first contends that there have been no continuous and systematic contacts with Texas sufficient to subject it to the general jurisdiction of the Texas legal system.  Based on the record before us, Ark has made numerous contacts over a relatively short period of time for the specific purpose of obtaining the loan from Church.  Ark’s contacts with Texas do not demonstrate a pattern of continuing and systematic activity.  
Schlobohm v. Schapiro
, 784 S.W.2d 355, 357 (Tex. 1990) (citing 
Helicopteros Nacionales de Colombia, S.A. v. Hall
, 466 U.S. 408, 414, n.9, 104 S.Ct 1868, 80 L.Ed.2d 404 (1984)).   It is the quality of the contacts and not just the number of contacts that is determinative on the issue of general jurisdiction.  
Am. Type Culture
, 83 S.W.3d
 at 809-810.   After reviewing the contacts in question, we agree with Ark that there are insufficient contacts to maintain general jurisdiction.  Therefore, we conclude the trial court erred in finding general jurisdiction.  

Specific Jurisdiction

Agency

In determining the issue of specific jurisdiction, the first question to be confronted is the status of Knighton.  Ark’s brief suggests that Knighton was a random third party whose actions could not be considered in properly determining specific jurisdiction over Ark.  The record, however, demonstrates that Knighton sought out Church and was the “Broker” for Ark in procuring a $4,000,000 loan.  The Client/Broker Agreement signed by Knighton and Ark says that “‘SUCCESSFUL PROCUREMENT OF FINANCING’ means that the Broker has obtained a binding commitment from the lender to advance funds, and that the commitment has been accepted by the Client.”  It was in order to achieve this sole result that Knighton contacted Church.  The Client/Broker Agreement further provides that Ark will furnish, at its expense, all documents, information, plans, specifications, etc. to Broker to be used by Broker or lenders in negotiating a loan.  In essence, the Client/Broker Agreement provided Knighton authority to obtain a loan commitment for Ark, subject to Ark’s final approval.  Under such an agreement, Knighton was the agent for Ark in finding a lender and procuring financing.  
Royal Mortgage Corp. v. Montague
, 41 S.W.3d 721, 733-34 (Tex.App.–Fort Worth 2001, no pet.).  Having determined that Knighton was the agent for Ark, the next consideration is the effect of Knighton’s contact.

The record establishes Church had no previous contact with either Knighton nor Ark.  Further, there is nothing in the record to indicate that Church conducts any type of general advertising for borrowers.  The resulting conclusion is that Ark, through its agent’s and its own acts, purposefully sought out Church as a source of financing.  It is also clear from the record that Ark ratified Knighton’s actions by subsequently executing the commitment contract.  
Walker Ins. Servs. v. Bottle Rock Power Corp.
, 108 S.W.3d 538, 552 (Tex.App.–Houston [14
th
 Dist.] 2003, no pet.). 

Minimum Contacts 

Ark posits that the contacts between the parties that Church contends establishes jurisdiction are the acts of Church alone.  As such, they are insufficient to establish minimum contacts.  
U-Anchor Adver., Inc. v. Burt
, 553 S.W.2d 760, 763 (Tex. 1977).  However, the findings of fact by the trial court identify twelve separate acts performed by Ark.  Although Ark has generally challenged the findings of fact and conclusions of law, in footnote 4 of its brief, it does not specifically challenge the findings in paragraph 10 of the trial court’s findings of fact and conclusions of law.  Assuming arguendo that the challenges listed in the footnote are sufficient to raise the issue of the findings contained in paragraph 10, Ark has failed to identify any evidence that would controvert these findings.  The burden was on Ark to provide the court with such evidence.  
Am. Type Culture
, 83 S.W.3d at 807.  Ark has failed to meet this burden and those facts listed in paragraph 10 have, for our purposes, been determined.

Ark further contends that, even if it performed the acts alleged by Church, the legal effect does not render Ark amenable to personal jurisdiction.  Ark cites the court to the cases of 
3-D Elec. Co. v. Barnett Constr. Co.
, 706 S.W.2d 135 (Tex.App.–Dallas 1986, writ ref’d n.r.e.), 
Blair Commc’ns, Inc. v. SES Survey Equip. Servs., Inc.
, 80 S.W.3d 723 (Tex.App.–Houston [1
st
 Dist.] 2002, no pet.), and 
Moni Pulo Ltd. v. Trutec Oil and Gas, Inc.
, 130 S.W.3d 170 (Tex.App.–Houston [14
th
 Dist.] 2003, pet. denied) as demonstrating that Church’s proof was legally deficient.  However, a close reading of the cases discloses significant differences between the cited cases and the facts before us.  In 
3-D Elec. Co.
, the non-resident defendant did not initiate the contact with the Texas plaintiff.  Rather, a third party, who the appellate court stated was not the alter ego of the defendant corporation but a subsidiary, initiated the contracting process.  Generally, a foreign parent corporation is not subject to the jurisdiction of the forum state merely because its subsidiary conducts business in that forum.  
3-D Elec. Co.
 706 S.W., 2d at 139.  In 
Blair
,
 
 the initial contact was again by a third party.  In resolving the case against extending jurisdiction over the non-resident defendant, the court again cited the non-party initiation of the contract.  
Blair Commc’ns, Inc.
, 80 S.W.3d at 729.  Finally, in 
Moni Pulo Ltd.
, the plaintiff initiated the contact with Texas rather than the defendant.  Additionally, the  issue of maintenance of general jurisdiction, based on the negotiation of a contract in Texas by two non-residents for the performance of a joint venture outside of Texas was before the  court.  
Moni Pulo Ltd.
, 130 S.W.3d at 175-76.  Thus, all of these cases are distinguishable from the facts before the court.

Ark next contends that the findings contained in paragraph 13 of the trial court’s findings of fact and conclusions of law are future acts required by a contract that was never signed and, therefore, are of no legal affect.  Specifically, Ark posits that the law does not permit anticipated, contemplated or executory actions/obligations to form the basis for minimum contacts.  
See
 
Moni Pulo Ltd
, 130 S.W.3d at 176.  Future plans by themselves cannot create personal jurisdiction where no other actions existed, however, future plans and executory contracts can be considered factors in determining whether minimum contacts exist. 
See
 
Burger King
, 471 U.S. at 479.  Therefore, the trial court was permitted to consider the future plans and executory contracts as part of the totality of the contacts between the parties.

Legal Sufficiency

Ark contends that the evidence is legally insufficient to sustain personal jurisdiction over it.  In reviewing the trial court’s findings of fact for legal sufficiency, we consider only the evidence and inferences tending to support the trial court’s findings, disregarding all contrary evidence and inferences.  
Wal-Mart Stores, Inc. v. Gonzalez
, 968 S.W.2d 934, 936 (Tex. 1998).  The record before us clearly demonstrates that Ark purposefully contacted Church to obtain a loan from a Texas resident.  Accordingly, we conclude that  the evidence is legally sufficient to support the findings of fact issued by the trial court.

Factual Sufficiency

Having considered Ark’s various contentions about the legal affect of the trial court’s resolution of evidentiary matters, the next issue would be to consider the factual sufficiency of the total record.  We review the entire record, both the evidence favorable to and contrary to the trial court’s finding.  
Pool v. Ford Motor Co.
, 715 S.W.2d 629, 635 (Tex. 1986).  Ark points to the facts, evidenced in the record, that Ark is a Maryland corporation with its principal place of business located in Maryland; Ark had not done business in the State of Texas nor did it own any real property in the state; the property involved in the transaction was located in Maryland; the administrative requirements for the loan commitment either were performed in or could have been performed in Maryland;  and that Church does business throughout the United States.  However, even when all of this evidence is considered, there is still one overwhelming factor; Ark purposely contacted Church, both through its agent and directly, with the specific design and goal of obtaining a loan from a Texas resident.  When all of the evidence is reviewed, both that which tends to prove and disprove the jurisdictional allegations, we cannot say that exercising jurisdiction over Ark is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust.   
Royal Mortgage Corp.
, 41 S.W.3d at 730.  Therefore, we conclude that the evidence is factually sufficient to support the decision of the trial court in finding purposeful contacts with the State of Texas for the purpose of specific jurisdiction over Ark.

Fair Play and Substantial Justice

However, finding the evidence factually sufficient to support a minimum contacts finding is not the end of the inquiry.  An assertion of personal jurisdiction may not offend traditional notions of fair play and substantial justice.  
Burger King
, 471 U.S. at 476; 
see also
 
Guardian Royal
, 815 S.W.2d at 228.  When a non-resident defendant has purposefully established minimum contacts with the forum state, the exercise of jurisdiction will rarely not comport with traditional notions of fair play and substantial justice. 
See
 
Burger King
, 471 U.S. at 477-78.   In discussing the issue of traditional notions of fair play and substantial justice, Ark concentrates on the lack of minimum contacts.  Those matters have been decided against it.  The relative convenience of the parties will be equal.  Either way one of the parties must travel to another state to get this matter determined.  Having found that Ark purposefully directed its activities toward a Texas resident, it is Ark’s burden to present a compelling case that some other consideration would render jurisdiction unreasonable. 
Id.
 at 477.  Ark has not presented any such compelling case; therefore, we conclude that exercising jurisdiction over Ark comports with traditional notions of fair play and substantial justice.

CONCLUSION

Having concluded that the trial court’s exercise of specific jurisdiction was proper, we affirm the judgment of the trial court. 

Mackey K. Hancock

         Justice

FOOTNOTES
1:
1 
Further reference to the Texas Civil Practice & Remedies Code will be by reference to “§ _____.”