Opinion issued February 24,
2011

 



In
The

Court of
Appeals

For
The

First District
of Texas

———————————

NO. 01-10-00224-CV

———————————

Syrian-American Oil Corporation, S.A., Appellant

V.

SSPD
Petroleum Development B.V., Appellee



 



 

On Appeal from the 190th
Judicial District Court

Harris County, Texas



Trial Court Case No. 2007-67830

 



 

 

MEMORANDUM
OPINION

 

          In this
interlocutory appeal, appellant, Syrian-American Oil Corporation S.A.
(“Syrian-American”), appeals the trial court’s order granting the special
appearance filed by appellee, Syria Shell Petroleum Development, B.V. (“SSPD”).[1]  In four issues, Syrian-American contends the
trial court erred by granting SSPD’s special appearance concerning two
contracts between the parties, by improperly limiting discovery, and by
striking portions of evidence.  We
conclude that SSPD is not subject to personal jurisdiction in Texas and that
Syrian-American’s other complaints are waived. 
We affirm. 

Background

             This case
concerns (A) a service contract for the development of oil in a foreign
country, (B) an assignment agreement between companies for performance of the
service contact, (C) a settlement agreement that followed a lawsuit claiming
the assignment agreement had been breached, and (D) current allegations of
breach of the assignment and settlement agreements.

          A.      The Service Contract 

In 1977, the Syrian Arab Republic (“Syrian
Government”) awarded a contract (the Service Contract) to a company (not a
party here) for the exploration, development, and production of oil in western
Syria.  That company later assigned its
interests in the Service Contract to Syrian-American, a company organized and
existing under the laws of Panama and headquartered in Greece.  By virtue of assignments, as of 1982, the
entities with interests in the Service Contract were

·       
Syrian-American;

 

·       
Syrian-American
Oil Corporation (Texas), which later merged into Coastal Oil & Gas
Corporation (“Coastal”); and

 

·       
Deminex-Deutsche
Erdolversorgungsgesellschaft m.b.H. (“Deminex”). 

 

To
ensure that the land was timely developed, the Service Contract required
certain portions of land to be relinquished to the Syrian Government at
particular time intervals if the land had not been developed for oil
production.  The Service Contract
provided that Syrian-American consented to jurisdiction in the courts of Syria regarding
disputes with the Syrian Government and that the law of Syria would control.  It also provided that Syrian-American would
comply with all Syrian laws, with certain enumerated exceptions relating
primarily to taxation.    

          B.      The Assignment
Agreement

In 1982, Syrian-American and Coastal assigned their
respective interests in the Service Contract to 

·       
Pecten
Orient Company (“Pecten”), a corporation organized under the laws of Delaware
and headquartered in Texas, and

 

·       
SSPD, a
company organized and existing under the laws of the Netherlands, with its
registered office located in The Hague, the Netherlands, and its principal
place of business located in Syria.

  

The Assignment Agreement required Pecten and SSPD to
pay Syrian-American and Coastal a percentage of the value of oil produced under
the Service Contract.  Pecten
initially served as the operator under the Service Contract, but it later
assigned all rights and obligations under the Service Contract to SSPD.  When it was enacted, the Assignment Agreement
provided that it would be governed by and construed in accordance with the laws
of the State of New York.  

After the effective date of the
Assignment Agreement, Pecten, SSPD, and the Syrian Government and its
state-owned oil company, entered into numerous annexes to the original Service
Contract.  Of these, Annexes 1, 3, and 4
extended the period of time for exploration under the Service Contract.  Because the Service Contract required that
Pecten and SSPD relinquish to the Syrian Government 25 percent of the original
reserves that were not leased
for development or production by October 1983, representatives of both Pecten
and SSPD met to
determine how to meet this contractual obligation.  These meetings were held in Houston, Texas in
August 1983.  Syrian-American alleges
that Pecten and SSPD, acting with the intent to reacquire the land after they
were freed of Syrian-American’s interest, agreed to relinquish land known by
Pecten and SSPD to hold large reserves. 
Two years after the land was relinquished to the Syrian Government in
1983, Pecten and SSPD reacquired it.

          C.      The
Settlement Agreement

In 1988, Syrian-American and Coastal filed case number
88-039547 in the 127th Judicial District Court of Harris County in Texas
against Pecten and SSPD (“1988 Lawsuit”). 
The petition alleged that Pecten and SSPD were required to pay
Syrian-American and Coastal a percentage interest on oil produced under the
Service Contract, as well as under certain annexes to the Service
Contract.  SSPD filed a special
appearance in the 1988 Lawsuit to contest personal jurisdiction.

Settlement discussions occurred between the parties,
but SSPD did not participate.  Michael
Forrest, then president of Pecten, spoke to and met with Walter Spencer, then
president of Coastal, on two occasions while the 1988 Lawsuit was pending.  Ed Pickle, the primary lawyer representing
Pecten in the 1988 Lawsuit, met with lawyers for Coastal and Syrian-American on
more than one occasion.  Neither Forrest
nor Pickle represented SSPD with respect to negotiating the settlement
agreement in the 1988 Lawsuit.  

J. Harrell Feldt of Vinson & Elkins LLP was
counsel of record for SSPD in the 1988 Lawsuit. 
Feldt was not involved in any settlement negotiations or discussions in
the 1988 Lawsuit, nor in the preparation of any settlement agreement in the
1988 Lawsuit.  Feldt did not approve,
disapprove, comment, or suggest changes on any draft settlement agreement in the
1988 Lawsuit and did not sign any settlement agreement in the 1988 Lawsuit. 

In late September 1989, Don C. Nelson, counsel for
Coastal, sent Feldt a letter and attached drafts of two documents: (1) a draft
of “Agreed Motion to Dismiss and to Place the Court’s File Under Seal” and (2)
a draft entitled “Agreed Order to Place File Under Seal and Agreed Final
Judgment.”  Feldt revised the draft
motion he received from Nelson in one respect, which was to include the word
“APPROVED” above Feldt’s signature block. 
In a letter to James DeMent, counsel for Syrian-American, Feldt
explained that his inclusion of “APPROVED” was to reflect that he, on behalf of
SSPD, was only approving the motion and not joining it, and that he had made
this change “consistent with SSPD’s position that the Texas court has no
jurisdiction over it.”  In response to
Feldt’s letter, Syrian-American’s counsel J. Burke McCormick wrote Feldt a
letter stating that “we have no objection to your revisions” to the Agreed
Motion to Dismiss and to Place the Court’s File Under Seal.  

Syrian-American, Coastal, Pecten, and SSPD entered
into a Settlement Agreement.  SSPD joined
the Settlement Agreement by approval of its managing director in the The Hague,
the Netherlands.  The Settlement
Agreement expressly stated that its purpose was to have the lawsuit dismissed
with prejudice without SSPD conceding to the personal jurisdiction of the Texas
court.  The Settlement Agreement stated, 

Whereas, Coastal/[Syrian American] and
Pecten/[SSPD] desire fully and finally to resolve, compromise and settle all of
the now outstanding Disputes between them with respect to payments pursuant to
Section 6 of the Assignment Agreement and with respect to Verification
Information, and, in connection therewith, to terminate the Lawsuit with
prejudice to all parties (a) without [SSPD] in any manner conceding that
it personally is subject to the jurisdiction of the aforementioned court or was
served properly with process and (b) without Coastal/[Syrian American] in any
manner conceding that they agree with or are bound by [SSPD’s] position with
respect to actions or activities outside this Settlement Agreement. 

 

The
Settlement Agreement revised some of the terms of the Assignment Agreement and
provided that thereafter the Assignment Agreement would be governed by
and construed in accordance with the laws of the State of Texas.  In a section entitled “Payments,” the Settlement Agreement
required Pecten and SSPD “in a collective sense” to make future payments under
the Assignment Agreement, as well as immediately tender a specified
amount.     

The Settlement Agreement required
the dismissal of the 1988 Lawsuit. SSPD, however, was not one of the parties
asking the court to take action.  The
Settlement Agreement provided that Coastal, Syrian American, and Pecten “shall
together present an Agreed Motion and an Agreed Order to the 127th Judicial
District Court” to dismiss the 1988 Lawsuit and to seal the records.  Accordingly, a joint motion to dismiss the
1988 Lawsuit was filed by Syrian-American, Coastal, and Pecten.  SSPD did not participate in any of the
proceedings before the court, nor did it ask the court to dismiss the
lawsuit.   

The Settlement Agreement expressly
maintained SSPD’s special appearance in the 1988 Lawsuit.  The Settlement Agreement stated,

Nothing contained in this Settlement Agreement, nor
anything related to the negotiation or execution thereof shall in any way be
construed as (a) any submission by [SSPD] to the personal jurisdiction of any
courts within the United States or (b) any concurrence by
Coastal/[Syrian-American] with respect to [SSPD’s] position as to the personal
jurisdiction of such courts over [SSPD] with respect to actions or activities
outside this Settlement Agreement.

 

In October 1989, the presiding judge of the 127th District
Court signed an Agreed Order to Place File Under Seal and Agreed Final
Judgment. 

          D.      The
Current Lawsuit

          In 2003, SSPD
entered into the Deep and Lateral Agreement with the Syrian Government.  Syrian-American asserted that, under the
Settlement Agreement and revised Assignment Agreement, it was entitled to
payments on the oil, gas, and condensate SSPD produced and may in the future
produce from lands covered by the Deep and Lateral Agreement.

The present lawsuit by Syrian-American asserted causes
of action for 

1.     breach of contract for failure to make
payments for oil, natural gas, and condensate as required by the Assignment
Agreement and Settlement Agreement,

 

2.     breach of the covenant of good faith and fair
dealing, a New York cause of action, alleging that SSPD’s relinquishment of
reserves was done to circumvent the Assignment Agreement and that it concealed
facts in its negotiations preceding the Settlement Agreement,

 

3.     breach of fiduciary duty, misapplication of
fiduciary property, and “aiding, abetting and/or inducing a breach of fiduciary
duty,” by asserting that SSPD was the agent and fiduciary of Syrian-American but
violated that relationship in failing to disclose the existence of the Natural
Gas Agreement and in relinquishing reserves to circumvent the Assignment
Agreement, and

 

4.     fraudulent inducement in its representations
of fact to induce Syrian-American to enter into the Settlement Agreement.[2]

  

Syrian-American
sought actual damages, attorney’s fees, and exemplary damages.  SSPD made a special appearance objecting to
the exercise of personal jurisdiction in the current lawsuit.  The trial court granted the special
appearance and made findings of fact and conclusions of law.

Special
Appearance

          Syrian-American’s first two issues challenge the trial
court’s order granting SSPD’s special appearance.  We address (A) the applicable law concerning
special appearance, (B) SSPD’s contacts stemming from the Assignment Agreement,
and (C) SSPD’s contacts stemming from the Settlement Agreement.           

          A.      Applicable Law

          The
applicable law in this case is (1) the standard of review, (2) the law for
special appearance, (3) the law for personal jurisdiction, and (4) the law
concerning whether minimum contacts should be analyzed separately for each
claim.

                   1.       Standard of Review

          A legal conclusion concerning the
existence of personal jurisdiction is a question of law subject to de novo review, but that
conclusion must sometimes be preceded by the resolution of underlying factual
disputes.  Am. Type Culture Collection,
Inc. v. Coleman, 83 S.W.3d 801, 805–06 (Tex. 2002); BMC Software Belg.,
N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  If the trial court issues findings of fact and
conclusions of law, we may review the findings of fact on legal and factual
sufficiency grounds and review the conclusions of law de novo as a legal
question. 
Silbaugh v. Ramirez, 126 S.W.3d 88, 94 (Tex. App.—Houston [1st
Dist.] 2002, no pet.)  (citing BMC Software, 83 S.W.3d at 794).  However, “we review de novo if the underlying
facts are undisputed or otherwise established.” 
Preussag Aktiengesellschaft v. Coleman, 16 S.W.3d 110, 113 (Tex.
App.—Houston [1st Dist.] 2000, pet. dism’d w.o.j.). 

                   2.       Law of Special Appearance

          A plaintiff bears the initial burden
of pleading allegations sufficient to bring a non-resident defendant within the
terms of the Texas long-arm statute.  Kelly
v. Gen. Interior Constr., Inc., 301 S.W.3d 653, 658 (Tex. 2010); Am. Type Culture Collection,
83 S.W.3d at 807.  To establish jurisdiction over a nonresident
defendant, the plaintiff must plead a “connection between the defendant[’s]
alleged wrongdoing and the forum state.” 
Kelly, 301 S.W.3d at 655.  

          If
the plaintiff pleads sufficient jurisdictional allegations, the
nonresident defendant then assumes the burden of negating all bases of
jurisdiction in those allegations.  Kelly, 301 S.W.3d at 658; Moki Mac River
Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007).  If the plaintiff does not plead sufficient
jurisdictional facts, the defendant meets its burden to negate jurisdiction by
proving it is not a Texas resident.  Kelly, 301 S.W.3d at 658–59.   The
plaintiff’s original pleadings as well as its response to the defendant’s
special appearance can be considered in determining whether the plaintiff
satisfied its burden.  Wright v. Sage
Eng’g, Inc., 137 S.W.3d 238, 249 n.7 (Tex. App.—Houston [1st Dist.] 2004,
pet. denied).  In conducting our review,
we accept as true the allegations                                                      
in the petition.  Pulmosan
Safety Equip. Corp. v. Lamb,
273 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

                   3.       The Law of Personal Jurisdiction

          A court may assert personal jurisdiction over a
non-resident defendant if the requirements of the Due Process Clause of the
United States Constitution[3]
and the Texas long-arm statute[4]
are both satisfied.  Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868,
1872 (1984); CSR, Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996).  “Because the Texas long-arm statute reaches
‘as far as the federal constitutional requirements of due process will allow,’
the statute is satisfied if the exercise of personal jurisdiction comports with
federal due process.”  Preussag
Aktiengesellschaft, 16 S.W.3d at 113 (quoting CSR, Ltd., 925 S.W.2d
at 594).  We thus examine only
whether a Texas court’s exercise of jurisdiction over SSPD would comport with the
requirements of federal due process.  See
id.

          To meet the requirements of federal
due process, “the nonresident defendant must have purposefully established such
minimum contacts with the forum state that it could reasonably anticipate being
sued there.”[5]  Id. (citing Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985)).  “If the nonresident defendant has
purposefully availed itself of the privileges and benefits of conducting
business in a state, it has sufficient contacts to confer personal
jurisdiction.”  Id. (citing Burger
King, 471 U.S. at 475, 105 S. Ct. at 2183). 
“Random, fortuitous, or attenuated contacts do not suffice.”  Id. (citing Burger King, 471
U.S. at 475, 105 S. Ct. at 2183). 

          To assess whether a non-resident
defendant has purposefully availed himself of the privileges and benefits of
conducting business in Texas, we examine three factors.  See Michiana Easy Livin’ Country, Inc. v.
Holten, 168 S.W.3d 777, 785 (Tex. 2005). 
First, only the defendant’s own actions may constitute purposeful
availment; a defendant may not be haled into a jurisdiction based solely on the
unilateral activities of a third party.  Id.
(citing Burger King, 471 U.S. at 475, 105 S. Ct. at 2183).  Second, the defendant’s acts must be purposeful,
and a showing of random, isolated, or fortuitous contacts is insufficient.  Id. (citing Keeton v. Hustler
Magazine, Inc., 465 U.S. 770, 774, 104 S. Ct. 1473, 1478 (1984)).  Third, a defendant must seek some benefit,
advantage, or profit through his purposeful availment because jurisdiction is
based on notions of implied consent; that is, by seeking the benefits and
protections of a forum’s laws, a non-resident consents to suit there.  Id. (citing World-Wide Volkswagen
Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980)).  The purposeful availment test should focus on
“the defendant’s efforts to avail itself of the forum” and not “the form of the
action chosen by the plaintiff.”  Moki
Mac, 221 S.W.3d at 576.  

          Minimum-contacts analysis is further
divided into specific personal jurisdiction and general jurisdiction.  Preussag Aktiengesellschaft, 16 S.W.3d
at 114.  In this case, we do not address
general jurisdiction because Syrian-American only asserts that SSPD is subject
to specific jurisdiction.  A court may
exercise specific personal jurisdiction over a non-resident defendant if two
elements are shown: (1) the non-resident purposely directed its activities
toward the forum state or purposely availed itself of the privileges of
conducting activities there and (2) the controversy arises out of or is related
to the non-resident’s contacts with the forum state.  Freudensprung v. Offshore Tech. Servs.,
Inc., 379 F.3d 327, 343 (5th Cir. 2004).

                   4.       Law Concerning Contacts for Separate Claims

          Generally, we review assertions of
specific jurisdiction on a claim-by-claim basis.  See
Touradji v. Beach Capital P’ship, 316 S.W.3d 15, 25–26 (Tex.
App.—Houston [1st Dist.] 2010, no pet) (citing Kelly, 301 S.W.3d at 660; Seiferth v.
Helicopteros Atuneros, Inc.,
472 F.3d 266, 274 (5th Cir. 2006)); see also Barnhill v. Automated Shrimp
Corp., 222 S.W.3d 756, 767
(Tex. App.—Waco 2007, no pet.) (following Seiferth).  However, when separate claims are based on
the same forum contacts, a separate analysis of each claim is not required.  See Sutton v. Advanced Aquaculture Sys.,
Inc., 621 F. Supp. 2d 435, 442 (W.D. Tex. 2007) (distinguishing Seiferth
on basis that plaintiff’s claims all arose from same set of forum contacts); see
also Davis Invs., VI, L.P. v. Holtgraves, No. 14-08-00222-CV, 2009 WL 975961, at *12 n.7 (Tex.
App.—Houston [14th Dist.] Feb. 26, 2009, pet. denied) (agreeing “with other
courts that generally a specific-jurisdiction analysis should be performed on a
claim-by-claim basis” but declining to do so because plaintiff’s claims all
arose from same facts and defendant asserted single basis for his special
appearance to each claim).  In this case,
Syrian-American asserts
that its claims concerning the Assignment Agreement all arise from the same set
of forum contacts and that its claims relating to the Settlement Agreement all
arise from a separate set of contacts. 
SSPD does not dispute this. 
Therefore, we address the claims arising from the Assignment Agreement
together and then separately address the claims arising from the Settlement
Agreement.  See Sutton, 621 F. Supp. 2d at 442; Davis
Invs., 2009 WL 975961, at
*12 n.7.

          B.      Assignment Agreement

          In its first issue,
Syrian-American contends that the trial court erred by finding no specific
jurisdiction concerning the Assignment Agreement.  

ehhhSSPD did not purposefully
establish any minimum contacts with Texas. 
SSPD is a company from the Netherlands with its principal place
of business in Syria that
contracted for the development of land in Syria.  The Assignment Agreement assigns oil
and gas interests located in Syria to SSPD and Pecten for development, and
requires certain payments on those interests to Syrian-American, a Panamanian
company with offices in Greece.  The only
connection to Texas is that a party to the Assignment Agreement is Pecten, a
Delaware company headquartered in Texas. 
Contracting
with a Texas entity alone does not satisfy the minimum-contacts
requirement.  See Old Kent Leasing Servs. Corp. v. McEwan, 38 S.W.3d 220, 230 (Tex.
App.—Houston [14th Dist.] 2001, no pet.).     

SSPD had discussions in Houston
concerning the Assignment Agreement. 
SSPD and Coastal attended meetings, communicated, and negotiated with
Syrian-American and Pecten in Houston when the Assignment Agreement was
formed.  Generally, negotiation and execution of
a contract in Texas are not minimum contacts with Texas if performance occurs
elsewhere, as here.  Moni Pulo, Ltd. v. Trutec Oil & Gas, Inc., 130 S.W.3d 170, 175 (Tex. App.—Houston [14th Dist.]
2003, pet. denied); see
TeleVentures, Inc. v. 1nt’l Game Tech., 12 S.W.3d 900, 910 (Tex. App.—Austin
2000, pet. denied) (“While [defendant] admits that decisions regarding the
project were made while in communication with [Texas plaintiff], these contacts
are insufficient to establish in personam jurisdiction.”).

          According to
Syrian-American, SSPD had meetings in Houston where it discussed a plan to
breach the Assignment Agreement by relinquishing certain reserves to the Syrian
Government and then re-obtaining them after they were freed of
Syrian-American’s interest.  Numerous
communications by a non-resident with a person in Texas relating to a contract
do not necessarily constitute minimum contacts in an action for breach of that
contract.  See Alenia Spazio, S.p.A. v. Reid, 130 S.W.3d 201, 213 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied).

          Additionally, Syrian-American contends
that the meetings in Houston breached the implied covenant of good faith and
fair dealing imposed on every contract under New York law.  We note that the choice of law in the Assignment
Agreement prior to 1989 was New York law and after the 1989 Settlement
Agreement was Texas law.  The claim for
breach of the duty of good faith and fair dealing is law applicable in New York
but not in Texas.  The Texas supreme court has
consistently held that Texas law does not imply a covenant of good faith and
fair dealing as part of every contract, only those contracts that are marked by
shared trust or an imbalance of bargaining power.  See, e.g., FDIC v. Coleman, 795 S.W.2d 706, 709–10 (Tex.
1990).  The claim for breach of the
covenant of good faith and fair dealing, therefore, does not relate to a
minimum contact with Texas for jurisdictional purposes.  

The Settlement Agreement’s provision that beginning in
1989 the Assignment Agreement would apply Texas law is not a minimum contact
with Texas.  A choice of law provision
should be considered in determining whether a defendant has purposefully
invoked the benefits and protection of a state’s law for jurisdictional
purposes; however, a choice of law provision, standing alone, is not sufficient
to confer jurisdiction.  Burger King, 471 U.S. at 482, 105 S. Ct.
at 2185; Preussag Aktiengesellschaft,
16 S.W.3d at 125.  “Nor does it indicate
a voluntary submission to the personal jurisdiction of the state’s courts in
the absence of any express understanding to that effect.”  Preussag
Aktiengesellschaft, 16 S.W.3d at 125. 
Rather, “prior negotiations and contemplated future consequences, along
with the terms of the contract and the parties’ actual course of dealing . . .
must be evaluated in determining whether the defendant purposefully established
minimum contacts within the forum.”  Burger King, 471 U.S. at 479, 105 S. Ct.
at 2185.  Here, the performance of the
contract was in Syria, with payments to be made to Syrian-American in
Greece.  Thus, the choice of law
provision in the 1989 Settlement Agreement is not sufficient to confer
jurisdiction over the alleged breach of the Assignment Agreement.  See id.;
Moni Pulo, 130 S.W.3d at 175.

Although Pecten and SSPD are
jointly and severally liable under the Assignment Agreement, joint and several liability
is a basis for imposing liability but not for finding personal jurisdiction.  See
PHC-Minden, L.P., v. Kimberly-Clark Corp., 235 S.W.3d 163, 175 (Tex. 2007) (some factors relevant to
joint liability under single business enterprise theory are irrelevant to
personal jurisdiction).  Because SSPD did
not purposely direct its activities toward Texas or purposely avail itself of
the privileges of conducting activities here, SSPD did not purposefully
establish minimum contact with Texas.  See
Helicopteros Nacionales, 466 U.S. at 414, 104 S. Ct. at 1872.  Because there is no minimum contact with
Texas, we need not address whether the controversy arises out of any contact
with Texas, which is also required for establishing specific personal
jurisdiction over a defendant.  See Freudensprung, 379 F.3d at
343.  

We overrule Syrian-American’s first issue.

          C.      Settlement
Agreement  

          In its second
issue, Syrian-American contends the trial court erred by finding no specific
jurisdiction concerning the Settlement Agreement.  We conclude (1) SSPD did not purposely direct its
activities toward Texas nor purposely avail itself of the privileges of
conducting activities here and (2) the controversy does not arise out of or
relate to SSPD’s contacts with Texas.

                   1.       Purposeful Direction of
Activities or Availing of Privileges

Syrian-American contends that SSPD
had minimum contacts with Texas by (a) Pecten acting as an agent for SSPD in
settlement negotiations, (b) personally conducting settlement negotiations, and
(c) agreeing to performance in Texas in that the 1988 Lawsuit would be
dismissed in Texas pursuant to the Settlement Agreement signed by SSPD.  We conclude the record does not support the
first two assertions and the dismissal of the lawsuit is not a minimum contact
because SSPD was not a party to the motion to dismiss.

                   a.       Pecten
Did Not Act as Agent for SSPD 

Syrian-American asserts that
the exercise of jurisdiction over SSPD is proper under the theory of
agency.  Specifically, Syrian-American
contends that Michael Forrest, the president of Pecten, negotiated the agreement
and that SSPD, by signing the agreement, “ratified the actions of Michael
Forrest” and, therefore, Forrest’s actions in Texas may be attributed to
SSPD.  However, in pertinent part, the
trial court made the following findings of fact concerning Forrest’s purported
agency:

18.     Mr. Forrest
did not talk to anyone at [SSPD] before his conversations with Mr. Spencer
[Coastal’s representative].

 

19. Mr. Forrest did not have to obtain approval from
anyone at [SSPD] before his conversations with Mr. Spencer.

 

21.     Mr. Forrest did not act as the agent for
[SSPD] during his discussions with Mr. Spencer.

 

26.     Mr. Forrest
did not talk with anyone at [SSPD] regarding his discussions with Mr. Spencer
until after he (Mr. Forrest) signed the Settlement Agreement in the 1988
Lawsuit in September 1989.

 

31.     [SSPD] did
not control, and did not have the right to control, Pecten’s acts or statements
with respect to the settlement negotiations of the 1988 Lawsuit.

 

33.     [SSPD]
elected not to participate in settlement negotiations with Coastal and [Syrian-American].

 

35.     [SSPD’s
Texas attorney] did not participate in the settlement process of the 1988
Lawsuit on behalf of [SSPD].  He was not
involved in any settlement negotiations or discussions in the 1988 Lawsuit. He
was not involved in the preparation of any settlement agreement in the 1988
Lawsuit. He did not approve, disapprove, or comment on any draft settlement
agreement in the 1988 Lawsuit. He did not suggest any changes be made to any
draft settlement agreement in the 1988 Lawsuit. He did not sign any settlement
agreement in the 1988 Lawsuit. He did not negotiate or enter into a settlement
agreement with [Syrian-American] in
Harris County, and he did not make any representation to [Syrian-American] in Harris County,
Texas related to any settlement agreement.

 

Syrian-American challenges the
factual sufficiency of the evidence to support these findings of fact.  Specifically, Syrian-American asserts that
these findings “are against the great weight and preponderance of the evidence
and should be reversed.”  In determining
the factual sufficiency of the evidence to support a finding, courts of appeals
are to weigh all the evidence, both for and against the finding.  Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).  In reviewing a factual sufficiency
challenge to a finding where the burden of proof is on the complaining party,
that party must show that “the adverse finding is against the great weight and
preponderance of the evidence.”  Id. 
“In an appeal from a bench trial, we may not invade the fact-finding
role of the trial court, which alone determines the credibility of the
witnesses, the weight to give their testimony, and whether to accept or reject
all or any part of that testimony.”  Whaley v. Cent. Church of Christ of Pearland,
227 S.W.3d 228, 231 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing Nordstrom v. Nordstrom, 965 S.W.2d 575,
580–81 (Tex. App.—Houston [1st Dist.] 1997, pet. denied)).

Syrian-American asserts that the
Settlement Agreement shows that SSPD’s and Pecten’s “economic interests were
entirely aligned”; that SSPD “was an essential party to the Settlement
Agreement”; that SSPD “approved various aspects of the language of the
agreement”; and that the Settlement Agreement “contained language that
benefited only [SSPD] and that would not have been included . . . in the
absence of an advocate in the negotiations.” 
Syrian-American does not acknowledge any controverting evidence or
explain how the controverting evidence is so weak compared to the Settlement
Agreement that the trial court’s findings are against the great weight and
preponderance of the evidence.  

          Furthermore,
the trial court had the affidavit of a former Pecten employee familiar with the
facts surrounding the Settlement Agreement. 
In his affidavit, the employee averred, “[SSPD] elected not to
participate in settlement negotiations with the plaintiffs.  Pecten and the plaintiffs negotiated the
settlement of the 1988 Lawsuit.”  He also
stated, “[SSPD] did not control, and did not have the right to control, Pecten’s acts or statements with
respect to the settlement negotiations.” 
The trial court also had an affidavit from Forrest.  Forrest stated that he “did not act as the
agent for [SSPD]” during settlement discussions with Coastal and that he did
not tell Coastal he was acting for SSPD. 
Forrest also stated that he “did not meet or talk with anyone from
[Syrian-American] regarding the 1988 Lawsuit.” 
Finally, the trial court was presented with a letter from Forrest to
Coastal, written early in the settlement negotiations, in which he expressly
stated that he had “no authority to represent or bind [SSPD].”  We conclude that the trial court’s findings
that Forrest was not the agent of SSPD is not against the great weight and
preponderance of the evidence.  See In re E.S., 304 S.W.3d 571, 575–76 (Tex. App.—El Paso 2010,
pet. denied) (evidence supporting trial court’s finding of lack of jurisdiction
over non-resident defendant not against great weight and preponderance when
plaintiff testified defendant provided prenatal expenses for child and
defendant’s affidavit contained statement that he had not done so).

          Syrian-American
relies upon Walker Insurance Services v.
Bottle Rock Power Corp., 108 S.W.3d 538 (Tex. App.—Houston [14th Dist.]
2003, no pet.) to support its assertion that Forrest was SSPD’s agent.  In that case, Beane, the purported agent
initiated contact with Walker.  Walker Ins. Servs., 108 S.W.3d at
545.  The court of appeals, in holding
that Bottle Rock had ratified Beane’s conduct, noted that Bottle Rock “accepted
the benefits of [Walker’s] services, which it acquired as a direct result of
Beane’s efforts.”  Id. at 552.  The court also
noted, “Throughout Beane and Walker’s discussions, Bottle Rock supported,
accepted, and followed through on the efforts initiated by Beane.”  Id.  Finally the court stated, “Here the record
clearly reveals that once the contact between Beane and Walker was initiated,
Bottle Rock negotiated with . . . Walker through Beane, and eventually
consummated an agreement with Associated, appellant’s broker.”  Id.  The court concluded that under those
circumstances Bottle Rock had ratified Bean’s actions and therefore Beane’s
contacts with Texas were attributable to Bottle Rock for jurisdictional
purposes.  Id. at 553.  

          Here,
there is no evidence of the same or similar facts recited by the court in Walker. 
Syrian-American identifies no evidence, and the record contains no
evidence, that SSPD supported Forrest, accepted Forrest’s efforts, followed
through on Forrest’s efforts, or negotiated with Syrian-American through
Forrest.  We conclude that the evidence
supports the trial court’s finding that Forrest did not act as SSPD’s agent in
the negotiation of the Settlement Agreement.

                             b.      SSPD Did Not Participate in Negotiations

          The
trial court found that SSPD did not conduct settlement negotiations in
Texas.  The trial court made findings
that 

·       
SSPD elected not to participate in settlement
negotiations with Coastal and Syrian-American;

 

·       
SSPD did
not negotiate the Settlement Agreement, or have “input into the negotiations of
the Settlement Agreement,” in Houston or elsewhere in Texas; and

 

·       
SSPD did not make any representation to
Syrian-American during the settlement of the 1988 Lawsuit.

 

Syrian-American has not challenged these findings on
appeal.  We conclude that SSPD did not
participate in the negotiation of the Settlement Agreement. 

                             c.       SSPD Did Not
Request Dismissal of the 1988 Lawsuit

SSPD’s signature shows an
address in the Netherlands and it expressly maintained its position throughout
the litigation that it was not subject to personal jurisdiction in Texas.  SSPD’s attorney “approved” the motion to dismiss as to form
but did not join in the motion that asked the district court to dismiss the
1988 Lawsuit.  The actual performance of the Settlement Agreement—the
dismissal of the lawsuit—came from the conduct of parties other than SSPD. 

          At
most, the contacts SSPD has with Texas are that it agreed to a Settlement
Agreement that provided it would pay certain amounts to Pecten, a company
headquartered in Texas; Texas law would apply to the Settlement Agreement and
Assignment Agreement in 1989 and after; and the lawsuit pending in Texas against
it would be dismissed by Syrian-American and Pecten pursuant to the Settlement
Agreement, which SSPD agreed to join.  As
we note above, contracting with a Texas company and sending payments to Texas
are alone not minimum contact with Texas. 
See Shell Compañia Argentina de Petroleo, S.A. v. Reef
Exploration, Inc., 84 S.W.3d 830, 839 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).  We also note above that Texas choice of law
is alone not determinative of personal jurisdiction over a non-resident defendant.  Preussag
Aktiengesellschaft, 16 S.W.3d at 125. 
We conclude that SSPD’s decision to join the Settlement Agreement is not
a minimum contact with Texas because (1) the Settlement Agreement was made with
the agreed understanding that SSPD was maintaining its position that it was not
subject to personal jurisdiction in Texas, and (2) SSPD did not ask the
district court to take any action in the case. 
See Moki Mac, 221 S.W.3d at
575 (citing Burger King, 471 U.S. at
472, 105 S. Ct. at 2182) (party may structure its transaction to avoid
jurisdiction in Texas).  The dismissal
came as a result of a motion to dismiss filed by parties other than SSPD.  Because it never requested any action from
the district court, SSPD did not submit to the jurisdiction of the court.       

SSPD’s procedural posture is unlike
those situations where jurisdiction has been found to be proper over a
non-resident defendant who enters a settlement agreement.  Courts have held that when a party negotiates
a settlement contract in a state, enters the contract in the state, and
requires performance of the contract in the state, then the state has personal
jurisdiction over the party for breach of the agreement.  Bates
v. Global Credential Evaluations, Inc.,
No. 10-09-00264-CV, 2010 WL 1797400, at *4–5 (Tex. App.—Waco May 5, 2010, no
pet.) (holding court had personal jurisdiction over Bates based on Bates
attending mediation, entering settlement agreement, and payment of settlement
funds in Texas, significant amount of work Bates performed was generated in
Texas and affected Texas residents, and noting that agreement did not have
clause providing personal jurisdiction had not been waived); Turner v. Turner, No. 14-98-00510-CV,
1999 WL 33659, at *7 (Tex. App.—ousHHouston
[14th Dist.] Jan. 28, 1999, no pet.) (not designated for publication) (holding
Mary Turner purposefully availed herself of privileges and benefits of laws of
Texas because pending lawsuit concerned allegations stemming from subject
matter that had been previously addressed in agreed judgment in Texas court and
that had been performed in Texas in that subject of the agreement would remain
in nursing home in Texas and his checks would be deposited into Texas bank); Diversified Res. Corp. v. Geodynamics Oil &
Gas, Inc., 558 S.W.2d 97, 98 (Tex. Civ. App.—Corpus Christi 1977, writ
ref’d n.r.e.) (holding court had personal jurisdiction over Diversified
concerning breach of settlement agreement that had required installment
payments be made in Texas); see Minnesota
Mining & Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694,
695 (8th Cir. 1995) (holding court in Minnesota had personal jurisdiction over
Nippon concerning breach of settlement agreement where negotiations about
settlement occurred in part in Minnesota and where companies executed contract
in Minnesota that contained continuing obligations to each other in
Minnesota).  

Unlike these cases, Syrian-American
did not negotiate the Settlement Agreement at all, and specifically did not
negotiate in Texas.  Syrian-American was
not a party to the motion presented to the court that asked the court for
dismissal of the 1988 Lawsuit.  Although
dismissal of the 1988 Lawsuit resulted from the Settlement Agreement, the
dismissal came as a result of a motion to dismiss filed by parties other than
Syrian-American.  Syrian-American did not
ask the court to take any action.  No
part of the Settlement Agreement was performed by Syrian-American in
Texas.  We conclude that by entering the
Settlement Agreement, Syrian-American did not purposefully avail itself of the
privileges and laws of the State of Texas. 




                   2.       Cause of Action Arises from or is Related to Activity 

Even if we had determined that SSPD had minimum
contacts with Texas, we would hold that the court lacks personal jurisdiction
over SSPD because the cause of action does not arise from or relate to the
activity in Texas.  For personal
jurisdiction over a defendant, the evidence must show that the cause of action
“arises from or is related to an activity conducted within the forum.”  BMC Software, 83 S.W.3d at 796.  We focus our analysis on the relationship
among the non-resident, the forum, and the litigation to determine if the
alleged liability arises from or is related to an activity conducted in
Texas.  Counter Intelligence, Inc. v.
Calypso Waterjet Sys., Inc., 216 S.W.3d 512, 517 (Tex. App.—Dallas 2007,
pet.  denied).  The “arises from or is related to”
requirement of specific personal jurisdiction requires a “substantial
connection” between the non-resident defendant’s contacts and the “operative
facts of the litigation.”  Moki Mac,
221 S.W.3d at 584–85; see Gonzalez v. AAG Las Vegas, L.L.C., 317 S.W.3d 278, 285–86 (Tex.
App.—Houston [1st Dist.] 2009, pet. denied) (holding court lacked personal
jurisdiction over claims for declaratory judgment as to ownership interests in
car dealerships and claims for breach of loyalty and usurpation of corporate
opportunities because operative facts of litigation had no substantial
connection with Texas; focus of trial would be Gonzales’s conduct managing
dealership in Las Vegas); Info. Servs. Grp.,
Inc. v. Rawlinson, 302 S.W.3d 392, 404–05 (Tex. App.—Houston [14th Dist.]
2009, pet. denied) (holding court lacked personal jurisdiction over claims for
breach of employment and confidentiality agreements because operative facts of
litigation had no substantial connection with Texas).  That is, the non-resident’s conduct must have
been purposely directed towards or have occurred in the forum and must have a
“substantial connection” with the litigation’s operative facts.  Moki Mac, 221 S.W.3d at 584–85;
Glattly v. CMS Viron Corp., 177 S.W.3d 438, 447 (Tex. App.—Houston [1st
Dist.] 2005, no pet.).  Syrian-American
alleges causes of action for (a) breach of the Settlement Agreement and
Assignment Agreement and (b) fraudulent inducement.  

                             a.       Breach
of Contract

The elements for a claim of
breach of contract are the existence of a valid contract; performance or
tendered performance by the plaintiff; breach of contract by the defendant; and
damages sustained as a result of the breach. 
See Winchek v. Am. Express Travel Related Servs. Co., 232 S.W.3d 197,
202 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  The operative facts of the claim for
breach of the Assignment Agreement and breach of the Settlement Agreement are
not related to where the contract was negotiated or signed.  See IRA Res., Inc. v. Griego, 221 S.W.3d 592, 597–98 (Tex. 2007)
(per curiam) (contracting with Texas resident and accepting account initiation
fee not sufficient to satisfy minimum
contacts test where services were to be performed in
California); Nogle & Black Aviation,
Inc. v. Faveretto, 290 S.W.3d 277, 283 (Tex. App.—Houston [14th Dist.]
2009, no pet.) (citing Barnstone v. Congregation Am Echad, 574 F.2d 286, 288–89 (5th Cir.
1978) (noting that “it is the place of performance rather than execution,
consummation or delivery which should govern the determination of
jurisdiction”)); cf. Fleischer v. Coffey, 270 S.W.3d
334, 338 (Tex. App.—Dallas 2008, no pet.) (finding jurisdiction proper based in
part on contract being performed in Texas). 
Syrian-American also alleges SSPD met with Pecten in Houston, Texas “to
discuss and agree to engage in conduct that would breach the contracts with
[Syrian-American].”  However, the
discussion or agreement to breach is not an operative fact of the litigation;
rather, the actual breach is the operative fact.  See
Dorsett v. Cross, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003,
pet. denied) (“A breach occurs when a party fails or refuses to do something he has promised to do.”)
(emphasis added); see also Halmos v.
Bombardier Aerospace Corp., 314 S.W.3d 606, 620 (Tex. App.—Dallas
2010, no pet.) (“A breach of contract occurs when a party fails or refuses to perform an act that it expressly
promised to do.”) (emphasis added); Enron
Oil & Gas Co. v. Joffrion, 116 S.W.3d 215, 221 (Tex. App.—Tyler 2003,
no pet.) (“It should go without saying that a breach [of contract] is
determined by comparing the terms of a contract with the actions of the alleged breaching party.”) (emphasis added). Whether SSPD discussed the alleged
breach beforehand, or where it may have discussed it, is not an element of the
claim for breach of contract and any such discussion will not be the focus of
the trial.  Rather, the focus of a breach
of contract trial is whether the alleged breaching party performed the act it
promised to perform.  See Dorsett, 106 S.W.3d at 217; see also Halmos, 314 S.W.3d at 620; Enron Oil & Gas Co., 116 S.W.3d at
221.  

The specific breach alleged by
Syrian-American is SSPD’s failure to pay Syrian-American as required by the
Settlement Agreement, which incorporated the Assignment Agreement.  But the Assignment Agreement requires certain
payments by SSPD based on the production of certain reserves in Syria.  We conclude that there is no
substantial connection between SSPD’s contacts and the operative facts of the
litigation.  See id.

          The
Settlement Agreement contains a Texas choice of law provisions and provides
that this choice of law provision will apply prospectively to the Assignment
Agreement.  As we discuss above, a choice of law is not alone
sufficient to confer jurisdiction.  Burger King, 471 U.S. at 482, 105 S. Ct.
at 2187; Preussag Aktiengesellschaft,
16 S.W.3d at 125.  The prior negotiations
and future consequences of the contract must also be considered.  Burger
King, 471 U.S. at 479, 105 S. Ct. at 2185. 
Here, SSPD did not negotiate the agreement in Texas and did not contract
to perform in Texas.  Furthermore, the
inclusion of a Texas choice of law provision will not be the focus of a trial
and thus is not an operative fact.          

                             b.      Fraudulent Inducement

          To prevail on a fraudulent inducement claim, a plaintiff must prove the elements of
fraud as they relate to an agreement between the parties.  Haase
v. Glazner, 62 S.W.3d 795, 798–99 (Tex. 2001).  The elements of fraud are: (1) the defendant
made a material misrepresentation that was false; (2) the defendant knew it was
false when made or made it recklessly as a positive assertion without any
knowledge of its truth; (3) defendant intended the plaintiff to act upon the
representation; and (4) plaintiff actually and justifiably relied on the
misrepresentation and suffered injury.  Ernst & Young, L.L.P. v. Pac. Mut. Life
Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001). 
Each of these elements discusses a “representation” or a
“misrepresentation.”  Thus, SSPD’s
representations to Syrian-American will be the focus of the litigation with
respect to the fraudulent inducement claim. 
See Proctor v. Buell, 293
S.W.3d 924, 932 (Tex. App.—Dallas 2009, no pet.) (stating operative facts of
fraud litigation would focus primarily on alleged misrepresentations).   As we note above, the trial court made
findings of fact that SSPD did not participate in settlement
negotiations with Coastal and Syrian-American and did not make any
representation to Syrian-American during the settlement of the 1988
Lawsuit.  Implicitly acknowledging that SSPD did not participate
in the settlement discussions, the Settlement Agreement contains
representations that were made by and to the other parties.  It has eleven clauses that begin “WHEREAS
Pecten has advised Coastal/[Syrian American] that . . . .”  The Settlement Agreement does not contain any
“WHEREAS” clause that begins “[SSPD] has advised Coastal/[Syrian American] that
. . . .” or “Pecten/[SSPD] has advised Coastal/[Syrian American] that . . .
.”  Without a representation or misrepresentation connected to Texas, the
operative facts of the litigation concerning the fraudulent inducement claim
have no substantial connection to Texas. 
See Proctor, 293 S.W.3d at 932
(holding jurisdiction over Proctor improper in fraud action because operative
facts of litigation would focus primarily on alleged misrepresentations made to
plaintiffs and undisputed evidence showed that Proctor never communicated with
plaintiffs).           

We hold that SSPD did not purposely direct its
activities toward Texas nor purposely avail itself of the privileges of
conducting activities here and the controversy does not arise out of or relate
to SSPD’s contacts with the forum state. 
See Rawlinson, 302 S.W.3d at 405 (no substantial connection
between appellants’ allegations of breach of confidentiality and non-compete
agreements and Rawlinson’s contracts with and employment by Texas companies,
two trips to Texas for company conferences, access to the appellants’ servers
in Texas, and occasional communications with appellants; focus of trial would
be on Rawlinson’s actions in U.K., not Texas); Proctor, 293 S.W.3d at 932.    

          We
overrule Syrian-American’s second issue. 

Discovery Limitations

          In its third issue, Syrian-American
asserts “the trial court improperly restricted discovery resulting in an
erroneous determination of personal jurisdiction.”

          Syrian-American’s entire argument on
this issue is as follows:

Finally, the trial court improperly limited the scope and
time frame of discovery on the motion of the defendants.  This case involves contracts dating back as
far as 1977, and the facts surrounding those contracts are significant to the
personal jurisdiction inquiry.  By
severely limiting [Syrian-American’s] ability to take discovery of matters that
occurred before September 1989, and by refusing to permit [Syrian-American] to
depose even a single employee of SSPD, the trial court erroneously precluded
[Syrian-American] from fully developing its arguments relating to personal
jurisdiction.  The trial court’s limit on
discovery was an abuse of discretion and should be reversed.

 

          Texas
Rule of Appellate Procedure 38.1(i) requires that an appellant’s brief “contain
a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.” 
Tex. R. App. P.
38.1(i).  “Rule 38 requires [a party] to
provide us with such discussion of the facts and the authorities relied upon as
may be requisite to maintain the point at issue.”  Tesoro Petroleum Corp. v. Nabors Drilling
USA, Inc., 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet.
denied).  “This is not done by merely
uttering brief conclusory statements, unsupported by legal citations.”  Id. 
“Issues on appeal are waived if an appellant fails to support his
contention by citations to appropriate authority . . . .”  Abdelnour v. Mid Nat’l Holdings, Inc.,
190 S.W.3d 237, 241 (Tex. App.—Houston [1st Dist.] 2006, no pet.); see
Daniel v. Falcon Interest Realty Corp., 190 S.W.3d 177, 189 (Tex.
App.—Houston [1st Dist.] 2005, no pet.). 
Similarly, appellate issues are waived when the brief fails to contain a
clear argument for the contentions made. 
See Brock v. Sutker, 215 S.W.3d 927, 929 (Tex. App.—Dallas 2007,
no pet.) (holding issue is waived by brief that makes no attempt to analyze
trial court’s order within context of cited authority).  Here, Syrian-American cites no authority to
support its argument concerning the trial court’s decisions concerning
discovery and does not analyze the trial court’s purported error.  We conclude this issue is waived.  See Tesoro Petroleum, 106 S.W.3d at
128.

          We overrule Syrian-American’s third
issue.

Evidentiary
Rulings

          In its fourth issue, Syrian-American
asserts “the trial court improperly struck portions of [Syrian-American’s]
evidence resulting in an erroneous determination of personal jurisdiction.”

          The following is Syrian-American’s
entire argument on this issue:

[T]he trial court struck significant portions of
[Syrian-American’s] evidence without any legitimate justification.  For example, the trial court struck as
hearsay 1) statements made by the witness himself; 2) statements offered only
to show that they were made in Houston, and not for their truth; [and] 3)
statements offered to show that they were made, and not for their truth.  By striking significant admissible evidence,
the trial court hamstrung [Syrian-American], limiting its ability to sustain
its burden of demonstrating agency. 
These evidentiary rulings were erroneous and likely led the court to an
improper result.  Accordingly, they
should be reversed.

 

(Citations
to the record omitted.)  Syrian-American
cites no authority and provides no analysis concerning the trial court’s
evidentiary ruling, nor does it explain how the ruling led to an “improper
result.”  We conclude this issue is
waived.  See Tesoro Petroleum,
106 S.W.3d at 128.

          We overrule Syrian-American’s fourth
issue.




Conclusion

          We affirm the trial court’s order
granting SSPD’s special appearance.    

 

 

                                                                   Elsa
Alcala

                                                                   Justice


 

Panel consists of Justices Jennings, Alcala,
and Sharp.

 

 











[1]
          See Tex. Civ. Prac. &
Rem. Code Ann. § 51.014(a)(7) (West 2008) (authorizing interlocutory
appeal of order granting special appearance).





[2]
          In its live petition, Syrian
American also asserted claims for fraud, money had and received, “conversion
and/or theft,” and conspiracy, but it does not include these claims in its
appellate brief.  We, therefore, do not
address these claims.  





[3]           U.S. Const. amend. XIV, § 1





[4]           See
Tex. Civ. Prac. & Rem. Code Ann.
§ 17.042 (West 2008).

 





[5]           Due
process also requires that the exercise of personal jurisdiction over a
nonresident defendant “comport with fair play and substantial justice.”  Preussag
Aktiengesellschaft v. Coleman, 16 S.W.3d 110, 113 (Tex. App.—Houston [1st
Dist.] 2000, pet. dism’d w.o.j.). 
However, the trial court did not make any findings of fact or
conclusions of law on this requirement and it is not raised by the parties.  We, therefore, do not address this issue.