**Affirmed and Memorandum Opinion filed August 11, 2022.**



In     The

# Fourteenth Court of Appeals

## NO. 14-20-00686-CV

**NOTEH BERGER, Appellant**

**V.**

**TOCO HOLDINGS, LLC AND TOCO WARRANTY CORP., Appellees**

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2020-19397**

## MEMORANDUM OPINION

In this interlocutory appeal, appellees ToCo Holdings, LLC ("ToCo Holdings") and ToCo Warranty Corp. ("ToCo Warranty") filed suit against Noteh Berger for breach of contract, breach of fiduciary duty, and fraud. Berger filed a special appearance objecting to personal jurisdiction in Texas, which the trial court denied. In a single issue, Berger argues that the trial court erred by failing to grant his special appearance. We affirm.

# I. BACKGROUND

The underlying facts are largely undisputed; the parties' dispute is whether those facts subject Berger to personal jurisdiction in Texas.

ToCo Warranty sells "after-market vehicle service contracts," such as extended car warranties and repair coverage plans. In November 2018, ToCo Warranty was purchased by ToCo Holdings, the current parent company of ToCo Warranty. Berger was appointed as Manager of ToCo Holdings and received a 20% interest in the net profits of ToCo Holdings. The Operating Agreement—executed on November 14, 2018 and signed electronically by Berger while he was in New York—set forth Berger's responsibilities, including the limitation requiring Berger to seek approval from the holders of a controlling interest in ToCo Holdings prior to:

(i) Enter[ing] into any agreements, including any agreement to borrow money (other than a Deficit Loan) that would obligate the Company or ToCo [Warranty] for any amount in excess of $50,000;

(ii) Mak[ing] any expenditure which is not set forth in a budget; provided, however, the Manager can in any year make cumulative expenditures of up to $50,000.00 that are not set forth in the Budget . . . .

On April 10, 2019, Berger entered into two NASCAR sponsorship agreements, obligating ToCo Holdings to $1,200,000 in payments over the next year. Berger resigned in October 2019, after the other officers and interest-holders of ToCo Holdings confronted him regarding the sponsorship agreements that he had committed to unilaterally.

ToCo Warranty and ToCo Holdings (collectively, the "ToCo plaintiffs") filed the present suit against Berger in March 2020 for breach of contract, breach of fiduciary duty, and fraud related to Berger entering into the NASCAR

sponsorship agreements, alleging that Berger did so without authority and in violation of ToCo Holding's Operating Agreement. In addition, the ToCo plaintiffs alleged Berger committed fraud, by making material and false representations to the ToCo plaintiffs in an effort to conceal the "existence, nature, and cost" of the sponsorship agreements. The ToCo plaintiffs further asserted that Berger verbally modified a contract with its marketing services provider to covertly bill for and fund the sponsorship agreements.

On June 16, 2020, Berger filed a special appearance contesting personal jurisdiction in Texas; and on the same day filed a complaint against the ToCo plaintiffs in California. *See* Tex. R. Civ. P. 120a. In his special appearance, Berger averred that he was not subject to general jurisdiction in Texas because he did not have continuous and systematic contacts with Texas. According to Berger, he is not "at home" in Texas because he lives and works in California, does not own property in Texas, is not registered to vote in Texas, has no intention of moving to Texas, does not have a Texas driver's license, and does not pay Texas taxes. Berger further asserted that any contacts he had with the ToCo plaintiffs were not contacts with Texas because the ToCo plaintiffs are Delaware entities.

Berger argued that he was not subject to personal jurisdiction in Texas, because as the highest executive officer of ToCo Holdings, "their nerve center was the place where he was located[,]" which was in California. Additionally, Berger alleged that he signed the Operating Agreement in New York and that he negotiated the sponsorship agreements from his office in California. Berger further submits that "there is no evidence that Mr. Berger engaged in any conduct within the State of Texas" and that "there is not a single allegation in the entire Petition of any conduct that occurred in, or was in any way related to, the State of Texas."

Berger also contends that finding jurisdiction in Texas would offend

3

traditional notions of fair play and substantial justice. According to Berger, the ToCo plaintiffs only filed their lawsuit in Texas to make it more onerous for Berger. Berger asserted that both of the ToCo plaintiffs are Delaware entities with their principal place of business in California. Berger claims that the burden upon him, as a nonresident defendant, will be great because he will incur increased costs of local counsel, travel, and time if made to litigate in Texas. He argues that witnesses are expected to be located in California, where factual circumstances occurred and where the negotiations were conducted and disputed agreements signed, and jurisdiction in Texas will increase the cost for witnesses to attend court. Berger also alleged that Texas has no interest in resolving this dispute because it involves non-resident business activity, and argues the Operating Agreement contains a Delaware choice of law provision requiring Texas to interpret the laws of Delaware. Additionally, he alleges it would be more effective to hear this suit in conjunction with the counter-suit in California that Berger filed against the ToCo plaintiffs. According to Berger, hearing this suit in Texas would burden interstate justice with duplicative work. Berger also claimed that no social polices were in play that would weigh in favor of finding jurisdiction over Berger in Texas.

The ToCo plaintiffs filed a response to Berger's special appearance. The ToCo plaintiffs argued that Texas had general jurisdiction over Berger because ToCo Holding's principal place of business—as stated in the Operating Agreement—is Houston, Texas. The ToCo plaintiffs assert that Berger, as an executive officer of ToCo Holdings, had regular business contact with the principal office. Additionally, the ToCo plaintiffs argued that (1) their accounting and funding were processed and dispersed from Houston and that Berger directed ToCo Warranty's billing and funding requests be forwarded to Houston; (2) Berger

4

received his salary payments from Houston; (3) Berger's personal company benefits, such as healthcare, were received from Houston; (4) Berger's corporate credit card was issued from Houston; (5) the funds ToCo Holdings used to purchased ToCo Warranty were wired from a bank in Houston; (6) the managers for two of the equity members of ToCo Holdings have their physical offices in Houston; (7) Berger borrowed $50,000 from ToCo Warranty in 2019, and the place of payment for the promissory note was 720 North Post Oak Road, Suite 500, Houston, Texas 77024; (8) Berger oversaw a ToCo Warranty retail outlet at a mall in Fort Worth, Texas for several months and personally executed the lease for the outlet after physically inspecting the site.

The ToCo plaintiffs also claimed that Berger's "recruitment of Texas employment" established specific jurisdiction in Texas; stated differently, the ToCo plaintiffs claimed that Texas has specific jurisdiction over Berger because of Berger's actions directed at Texas concerning the recruitment of employees and business opportunities. According to the ToCo plaintiffs, Berger was formerly an executive for AmTrust, and ToCo Warranty used to be a subsidiary of AmTrust. Berger met with Andrew Segal—a Texas resident and the owner of Boxer RE, a Texas company. After months of discussions, Berger convinced Segal and his two brothers—who are also Texas residents and the managers of two other companies in Texas—to buy ToCo Warranty from AmTrust. The ToCo plaintiffs attached to their response four different agreements that were all executed on November 14, 2018: (1) the Stock Purchase Agreement, in which ToCo Warranty was sold to Berger; (2) the Funding and Assignment Agreement, in which Berger assigned his interest in ToCo Warranty to ToCo Holdings, and, in return, Berger received a fractional net profits interest in ToCo Holdings; (3) the Operation Agreement, in which Berger was appointed the Manager of ToCo Holdings; and (4) the Service

5

Agreement, in which the Texas-based Boxer corporation agreed to provide payroll, human resource, and information technology services to ToCo Holdings. In short, the ToCo plaintiffs alleged that Segal and the other investor members of ToCo Holdings purchased ToCo Warranty through Berger, who acted as "an eager intermediary"; therefore, Berger's activities constituted "doing business" in Texas.

In addition, the ToCo Plaintiffs argued that Berger's liability related to conduct in Texas after his employment as manager with ToCo Holdings began. Before entering into the NASCAR sponsorship deals, Berger was supposed to seek approval from the other investor members, who are all Texas residents. Berger then directed all of the billing for the sponsorship agreement to Houston, Texas for payment. The ToCo plaintiffs alleged that Berger's actions would cause any reasonable person to anticipate suit in Texas.

Lastly, the ToCo plaintiffs alleged that Texas's jurisdiction over Berger comports with traditional notions of fair play and substantial justice. The ToCo plaintiffs argued that despite his claims to the contrary, Berger had not specified any witnesses who are located in Texas, and therefore, it would not be substantially harder for him to litigate in Texas. They also asserted that Texas has an interest in resolving this dispute because the other members are all Texas residents and the principal place of business for ToCo Holdings is Houston. The ToCo plaintiffs further assert that Texas has a greater interest than California in redressing the injuries of Texas residents, and that Berger's counterclaims for indemnification, breach of contract, and fraud could be fairly addressed in Texas.

On October 1, 2020, the trial court denied Berger's special appearance without issuing any findings of fact or conclusions of law. Berger filed a timely notice of appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(7) (authorizing interlocutory appeal of an order granting or denying a special appearance).

6

## II.    PERSONAL JURISDICTION

### A.    STANDARD OF REVIEW

Whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). The plaintiff bears the initial burden of pleading allegations sufficient to confer jurisdiction. *Luciano v. SprayFoamProducts.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). The burden then shifts to the defendant to negate all bases of jurisdiction in the allegations. *Id.* Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).

> The defendant can negate jurisdiction on either a factual or legal basis. Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction . . . .

*Id.* at 659 (footnotes omitted).

### B.    APPLICABLE LAW

A court must have personal jurisdiction over the parties to issue a binding judgment. *Luciano*, 625 S.W.3d at 7–8. "A defendant's contacts with the forum can give rise to either general or specific jurisdiction." *Id.* at 8 (citing *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010)). If a nonresident defendant's affiliations with the state are so "continuous and systematic" as to render it essentially at home in the forum state, then a court has general jurisdiction over that nonresident defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014);

7

*Luciano*, 625 S.W.3d at 8; *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). "By contrast, specific jurisdiction 'covers defendants less intimately connected with a State, but only as to a narrower class of claims.'" *Luciano*, 625 S.W.3d at 8 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)).

"Texas courts may assert personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal due-process guarantees." *Id.* (citing *TV Azteca*, 490 S.W.3d at 36); *see BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (noting that the Texas long-arm statute "permits Texas courts to exercise jurisdiction over nonresident defendants that 'does business' in Texas, and the statute lists some [non-exclusive] activities that constitute 'doing business.'" (citing Tex. Civ. Prac. & Rem. Code Ann. § 17.042))). "Consistent with federal due-process protections, a state may assert personal jurisdiction over a nonresident defendant only if the defendant has established 'minimum contacts' with the forum state such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Luciano*, 625 S.W.3d at 8 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see All Star Enter., Inc. v. Buchanan*, 298 S.W.3d 404, 411 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Specific jurisdiction through minimum contacts with the forum state is established when the defendant (1) purposefully avails itself of the privilege of conducting activities in the forum state, and (2) the lawsuit arises or relates to the defendant's contacts with the forum. *Luciano*, 625 S.W.3d at 8–9. "Although not determinative, foreseeability is an important consideration in deciding whether the nonresident defendant has purposefully established "minimum contacts" with the forum state." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795

(Tex. 2002).

### 1. Purposeful Availment

The touchstone of jurisdictional due process is purposeful availment. *Luciano*, 625 S.W.3d. at 9. "There must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "Where the defendant has 'deliberately' engaged in significant activities within a state, he 'manifestly has availed himself of the privilege of conducting business there.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)). "And because such activities are shielded by the 'benefits and protections' of the forum's laws, it is 'presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* (citing *Burger King Corp.*, 471 U.S. at 475–76).

When analyzing the defendant's contacts, courts consider the quality and nature of the contacts. *Moncrief Oil*, 414 S.W.3d at 151; *Retamco Oper., Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009); *see, e.g.*, *TV Azteca*, 490 S.W.3d at 43–52. A nonresident defendant does not need to have offices or employees in a forum state to purposefully avail itself of the forum. *Luciano*, 625 S.W.3d at 9 (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005)). But the operation of a sales and distribution network, or the directing of marketing efforts to the forum State in the hope of soliciting sales, may render a nonresident defendant subject to the State's jurisdiction in disputes arising from that business. *Id.* Alternatively, contacts that are fortuitous and attenuated do not satisfy the purposeful-availment standard. *Id.*

## 2. Nexus

The second prong of personal jurisdiction is "relatedness." *Luciano*, 625 S.W.3d at 14 (citing *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017)); *see Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 ("When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."). "Despite a nonresident defendant's flood of purposeful contacts with the forum state, the exercise of specific jurisdiction is prohibited if 'the *suit*' does not 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*." *Luciano*, 625 S.W.3d at 14 (emphasis in original). "This so-called relatedness inquiry defines the appropriate 'nexus between the nonresident defendant, the litigation, and the forum.'" *Id.* (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 579 (Tex. 2007)).

The relatedness prong does not require a causal connection. *Ford Motor Co.*, 141 S. Ct. 1022. Instead, the relatedness inquiry demands only that the suit "arise out of or relate to the defendant's contacts with the forum." *Id.* at 1026 ("[W]e have never framed the specific jurisdiction inquiry as requiring proof . . . that the plaintiff's claim came about because of the defendant's in-state conduct."); *see Luciano*, 625 S.W.3d at 15–18. "[S]pecific jurisdiction requires us to analyze jurisdictional contacts on a claim-by-claim basis." *Moncrief Oil*, 414 S.W.3d at 150. While varying states have approached the question of relatedness differently, the Texas Supreme Court has clarified that "[c]onsidering our own jurisprudence and the Supreme Court's analysis in *Rush,* we believe that for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki*, 221 S.W.3d at 585.

### 3. Fair Play & Substantial Justice

"Once minimum contacts have been established, we must still consider whether, for other reasons, exercising jurisdiction over the nonresident defendant would nevertheless run afoul of 'traditional notions of fair play and substantial justice.'" *Luciano*, 625 S.W.3d at 18 (quoting *Int'l Shoe*, 326 U.S. at 316; *TV Azteca*, 490 S.W.3d at 55)). "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (quoting *Spir Star*, 310 S.W.3d at 878); *TV Azteca*, 490 S.W.3d at 55.

> We consider the nonresident defendant's contacts in light of (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of several states in furthering fundamental substantive social policies.

*Luciano*, 625 S.W.3d at 18–19.

### C. APPLICATION

Because we determine it is dispositive, we first address the ToCo plaintiffs' claim that Texas has specific jurisdiction over Berger.

### 1. Purposeful Availment

We first note that in his appellate reply brief, Berger repeatedly asserts that the ToCo plaintiffs' arguments improperly rely on assertions contained in their response to his special appearance. According to Berger, we need to rely on the petition itself, not on arguments made in the response. However, "[i]n reviewing whether a plaintiff has met its initial burden of alleging jurisdictional facts sufficient to bring a nonresident defendant within the terms of the Texas long-arm

11

statute, we consider the plaintiff's pleadings *and its response to the defendant's special appearance*." *See Vinmar Overseas Singapore PTE Ltd. v. PTT Int'l Trading PTE Ltd.*, 538 S.W.3d 126, 132 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (citing *Perna v. Hogan*, 162 S.W.3d 648, 653 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (emphasis added).

Viewing both the ToCo plaintiffs' petition and their response, the ToCo plaintiffs alleged that Berger conducted substantial business dealings with Texas. Specifically, the petition, response, and evidence submitted in support of the ToCo plaintiffs' claims shows that Berger solicited Segal and his two brothers—all three of whom are Texas residents and owners of Texas-based businesses—to participate in a joint business acquisition plan where Berger would acquire ToCo Warranty and then give his interest in the company to ToCo Holding in exchange for a fractional net profit interest in ToCo Holdings and appointment as Manager of ToCo Holdings. ToCo Holdings, the owner, administrator, and operator of ToCo Warranty and Berger's employer, has its principal place of business in Houston, Texas. Far from seeking to avoid Texas, Berger sought out Texas and sought to benefit by seeking individuals and companies in Texas with enough capital to help him acquire ToCo Warranty. Additionally, Berger allegedly misrepresented the nature of the agreements to other Texas-based officers and shareholders; thus, his alleged wrongdoings caused harm to Texas residents and shareholders, as well as companies with their principal place of business in Texas.

We conclude that these contacts by Berger with Texas establish that Berger purposefully availed himself of the forum. *See Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 30 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (concluding that a non-Texas resident purposefully directed his activities towards Texas by, among other things, agreeing to serve as a manager of a Texas entity

12

when the partnership agreement identified Texas as the principal place of business); *TexVa, Inc. v. Boone*, 300 S.W.3d 879, 889 (Tex. App.—Dallas 2009, pet. denied) (finding jurisdiction over Californian defendants that allegedly breached fiduciary duties to Texas corporations and Texas shareholder, and concluding that the defendants purposefully availed themselves of Texas when they "agreed to form an ongoing business relationship with Texas residents, form a Texas corporation and act as officers and director of that corporation"); *Lewis v. Indian Springs Land Corp.,* 175 S.W.3d 906, 916 (Tex. App.—Dallas 2005, no pet.) (concluding that a Florida resident was subject to jurisdiction in Texas based upon his ongoing business relationship that required him to communicate with Texas business associates and based upon his position as a founder, shareholder and owner of companies "based in Texas law, with Texas citizens").

## 2.    Nexus

Berger asserts that any contacts he did have with Texas lack a sufficient nexus to the litigation itself. According to Berger, the "entirety of appellees' claims (for breach of contract, fraud, and breach of fiduciary duty) are premised on Mr. Berger's alleged conduct in negotiating, executing, and performing the marketing agreements identified in the Petition while acting as an employee of Appellees." Berger argues that he negotiated and executed those contracts while in California and asserts that the underlying suit is not connected to Texas in any way. However, a causal connection is not required for specific personal jurisdiction. *See Ford Motor Co.*, 141 S. Ct. at 1026. Instead, the relatedness inquiry demands only that the suit arise out of or relate to the defendant's contact with the forum. *Id.* Additionally, the ToCo plaintiffs' claims do not relate merely to the execution of the agreements, as Berger alleges; their claims also concern Berger's alleged misrepresentations about, and concealment of, the agreements.

In their original petition, the ToCo plaintiffs alleged that Berger was engaged in business in Texas pursuant to his actions as Manager of ToCo Holdings, which has its principal place of business in Texas. Indeed, the Operating Agreement, which sets forth Berger's responsibilities and was signed by Berger, identifies Houston as the principal place of business. In his special appearance, Berger argued that the suit has no nexus with Texas because the ToCo plaintiffs are Delaware entities with their principal place of business in California. But "a corporation's residence is the place where its corporate affairs are conducted—its principal place of business." *Moni Pulo Ltd. v. Trutec Oil & Gas, Inc.*, 130 S.W.3d 170, 175 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). While the ToCo plaintiffs do have offices in California and their Operating Agreement is interpreted under Delaware law, Berger does not contest that: (1) the ToCo plaintiffs' accounting and funding were processed and dispersed from Houston and that Berger directed ToCo Warranty's billing and funding requests be forwarded to Houston; (2) Berger received his salary payments from Houston; (3) Berger's personal company benefits, such as healthcare, were received from Houston; (4) Berger's corporate credit card was issued from Houston; (5) the funds ToCo Holdings used to purchased ToCo Warranty were wired from a bank in Houston; (6) the managers for two of the equity members of ToCo Holdings have their physical executive offices in Houston; and (7) operational services, such as human resources and information technology, were provided out of Houston. Accordingly, the ToCo plaintiffs' principal place of business is Texas. *See id.*

The evidence establishes that all of Berger's contacts with Texas relate to his business relationship with the ToCo plaintiffs. He agreed to partner with Texas residents and business owners to buy out another company and place himself as the manager of a Texas-based entity. Berger allegedly made false representations to

14

officers and interest-holding members of ToCo Holdings, all of whom are Texas residents, and he allegedly breached fiduciary duties to remaining shareholders who are Texas residents. Consequently, the underlying suit concerns whether, during the course of his activities as manager of a Texas-based company, Berger breached his fiduciary duty and breached the Operating Agreement by unilaterally entering into unauthorized agreements, and/or made fraudulent misrepresentations concerning the existence, nature, and cost of the agreements to Texas shareholders and residents. This is a sufficient basis to conclude the claims in this case are all substantially related to Berger's purposeful contacts with Texas. *See Touradji*, 316 S.W.3d 32 (concluding there was a substantial connection between the contacts and the underlying litigation when the defendant's contacts were related to ongoing business operations and the underlying suit concerned whether the defendant "made fraudulent representations to Texas residents, breached fiduciary duties that he owed to Texas residents, or interfered with the business relationships and contracts of Texas residents"); *TexVa*, 300 S.W.3d at 890 ("All of appellees contact with Texas relate to their business relationship with appellants. The underlying litigation concerns whether one of the parties has breached an agreement or a fiduciary duty arising from that business relationship. Therefore, we have no difficulty concluding that the litigation in this case arises from the appellees' contacts with the forum.").

Berger additionally contends that "[j]urisdiction over an individual generally cannot be based on jurisdiction over a corporation with which he is associated unless the corporation is the alter ego of the individual." *Davey v. Shaw*, 225 S.W.3d 843, 856 (Tex. App.—Dallas 2007). While this is true, the Supreme Court has confirmed that although "individuals' contacts with a forum are not to be analyzed based on their employer's activities in that forum, 'their status as

15

employees does not somehow insulate them from jurisdiction.'" *D.H. Blair Inv. Banking Corp. v. Reardon*, 97 S.W.3d 269, 277 (Tex. App.—Houston [14th Dist.] 2002, pet. dism'd w.o.j.) (quoting *Calder v. Jones,* 465 U.S. 783, 784 (1984)). Thus, we do not analyze Berger's employer's activities with Texas; rather, we analyze Berger's individual, purposeful contacts with Texas in relation to his ongoing business activities conducted in the state, his partnership with Texas residents to enter into a business relationship, the duties he owed—and allegedly breached—to Texas-based entities and residents, and his alleged wrongdoings committed against Texas shareholders and residents that caused harm to Texas-based companies. It is on these grounds that we rest our conclusion that Berger "'reached out' beyond his home state to Texas." *Lewis,* 175 S.W.3d at 918.

### 3. Fair Play & Substantial Justice

On balance, asserting personal jurisdiction over Berger would not offend traditional notions of fair play and substantial justice.

Subjecting Berger to suit in Texas imposes a burden on him, but the same can be said of all nonresidents. "Distance alone cannot ordinarily defeat jurisdiction." *Moncrief Oil*, 414 S.W.3d at 155; *see Spir Star,* 310 S.W.3d at 879 ("Nor is distance alone ordinarily sufficient to defeat jurisdiction: modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.") (quotation omitted). And the burden on Berger is somewhat alleviated by the convenience to the ToCo plaintiffs, who are headquartered in Texas, to be able to litigate in their forum state where most of their alleged witnesses would be located. The record indicates that all of the following individuals are located in Texas: all three of the Segal brothers, in addition to Debbie Rhodes, an employee of Boxer to whom Berger e-mailed the sponsorship invoices; Tim Nazier, the custodian of

records of Boxer; and Betty Jena Larson, the director of human resources for Boxer that manages the human resources department for ToCo Holdings. The allegations that Berger committed these offenses and caused injury to Texas-based companies and residents implicate a serious state interest in adjudicating the dispute. *See Moncrief Oil*, 414 S.W.3d at 155. And while Berger also argues that interstate judicial economy would be best served by resolving all of the parties' disputes in a single proceeding in California, judicial economy would more likely be best served by proceeding with a single case in Texas. Berger does not respond to the ToCo plaintiffs' assertion that Berger's claims against the ToCo plaintiffs' amount to nothing more than compulsory counterclaims that should have been brought as part of the initial case.

We conclude that the exercise of personal jurisdiction over Berger in this case does not offend traditional notions of fair play and substantial justice. *See Moncrief Oil*, 414 S.W.3d at 155; *see Spir Star,* 310 S.W.3d at 879.

### 4. Summary

Berger personally availed himself of Texas law, there is a substantial connection between the operative facts of the underlying lawsuit and Berger's contacts, and exercising jurisdiction over Berger would not offend traditional notions of fair play and substantial justice. Accordingly, we conclude that Texas has specific personal jurisdiction over Berger as to the ToCo plaintiffs' claims. We overrule Berger's sole issue on appeal.[1]

---

[1] Because our conclusion that Texas has specific personal jurisdiction over Berger is dispositive, we need not address Berger's arguments concerning general jurisdiction. *See* Tex. R. App. 47.1.

### III. CONCLUSION

We affirm the trial court's denial of Berger's special appearance.


/s/    Margaret "Meg" Poissant
          Justice


Panel consists of Justices Bourliot, Poissant, and Wilson.